CARLOS F. CINTRÓN VÉLEZ y JOSÉ T. CINTRÓN RAMÍREZ, demandantes y recurrentes, *v.* JORGE CINTRÓN DE JESÚS, ETC., demandados y recurridos.

*Número:* RE-86-535          *Resuelto:* 9 de diciembre de 1987

40

*Aníbal Irizarry Alicea*, abogado de los recurrentes; *Luis R. Rivera Mendoza*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

Carlos F. Cintrón Vélez y José T. Cintrón Ramírez recurren de la sentencia que reconoció a Lourdes María, Carlos y Jeannette, todos de apellidos Cintrón Serrano, hijos del demandante recurrente, Carlos F. Cintrón Vélez, como herederos de su abuelo paterno, don Fernando Cintrón De Jesús. El tribunal a su vez ordenó la venta del único bien inmueble del caudal.

Los demandantes y recurrentes eran hijos de Fernando Cintrón De Jesús, quien falleció el 30 de marzo de 1983 y dejó testamento abierto. Carlos F. Cintrón fue procreado

por don Fernando y doña María Vélez durante su matrimono, que duró hasta la muerte de ésta, y José Cintrón Ramírez nació de las relaciones entre el fenecido don Fernando con doña Irene Ramírez.

En su testamento don Fernando Cintrón De Jesús dejó a sus tres nietos, en aquel entonces menores de edad, el tercio de mejora y el tercio de libre disposición. El remanente de sus bienes se lo dejó por partes iguales a sus dos hijos, los demandantes recurrentes.

Los nietos favorecidos han residido con su madre; María Magdalena Serrano, en la propiedad que pertenecía al causante, y que es el único bien inmueble de que se compone su herencia desde antes de su fallecimiento.

Las partes en este caso presentaron ante el tribunal de instancia unas estipulaciones donde acordaron, entre otras cosas, que la propiedad fuera tasada y vendida en subasta pública y que la renta posible de la casa en litigio podría generar un ingreso en el mercado de alquiler de $250 a $300 mensuales. Conforme a estas estipulaciones el tribunal de instancia dictó sentencia el 15 de abril de 1986, en la que ordenaba a las partes cumplir con sus acuerdos y condiciones. A través de una *moción de reconsideración* los demandantes alegaron no estar conformes con la sentencia dictada, pues no se decidió sobre dos aspectos importantes. El tribunal de instancia enmendó la sentencia para resolver estos dos aspectos. Al no estar conformes los demandantes con la decisión, recurren ante nos y señalan que se cometieron los errores siguientes:

### PRIMER ERROR

Cometió error el Honorable Tribunal al declarar que Lourdes María, Carlos y Jeannette, todos de apellidos Cintrón Serrano son herederos de Fernando Cintrón por virtud de su testamento.

## SEGUNDO ERROR

Cometió error el Honorable Tribunal al concluir que un co-heredero, co-dueño o condómine, puede apoderarse de los bienes en comunidad y disfrutarlos para su exclusivo beneficio, sin tener que pagar la participación de los restantes. Solicitud de Revisión, págs. 3–4.

Revisamos mediante orden para mostrar causa.

### I

La cláusula séptima del testamento abierto de don Fernando Cintrón dispone:

Lega a sus nietos Lourdes María, Carlos y Jeannette de apellidos Cintrón Serrano, menores de edad, estudiantes, vecinos de esta ciudad e hijos de su hijo Carlos Fernando Cintrón Vélez y de Doña María Magdalena Serrano conocida por Maggie los tercios de mejora y de libre disposición por partes iguales en la *totalidad de sus bienes*. (Énfasis nuestro.) Apéndice IV, pág. 100.

Los bienes de don Fernando se componen de la casa donde éste residía con sus nietos y los bienes muebles que allí se encuentran. De la citada cláusula del testamento hay que interpretar cuál fue la verdadera intención del testador al dejarle a sus nietos el tercio de mejora y el de libre disposición.

El Art. 617 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2122, dispone:

El testador puede disponer de sus bienes a título de herencia o de legado.

En la duda, aunque el testador no haya usado la palabra heredero, si su voluntad está clara acerca de este concepto, valdrá la disposición como hecha a título universal o de herencia.

El Art. 609 del Código Civil, 31 L.P.R.A. sec. 2091, define al heredero y al legatario en la forma siguiente: "[Heredero

es aquel] que sucede a título universal, y al legatario el que sucede a título particular." También dispone el Código Civil en su Art. 697 (31 L.P.R.A. sec. 2286) que: "El·heredero instituido en una cosa cierta y determinada será considerado como legatario." Dichos artículos son susceptibles de variadas interpretaciones.

■ De considerarse legado, la parte de la herencia que el causante dejó a sus nietos se considerará como de parte alícuota. El profesor E. González Tejera en su obra *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. I, pág. 15, define el legado de parte alícuota como aquél a favor de una o varias personas de una porción aritmética ideal de una fracción de la totalidad del caudal.

■ En *Vivaldi v. Registrador*, 86 D.P.R. 629 (1962), donde también se trataba de un caudal constituido únicamente por la casa del testador y éste utilizó la palabra "lego", resolvimos que se trataba de un llamamiento a la universalidad del caudal y por lo tanto se consideró la cláusula como una institución de herederos. De igual manera se resolvió el caso de *Blanco v. Sucn. Blanco Sancio*, 106 D.P.R. 471, 477 (1977), donde citando el criterio utilizado en *Vivaldi v. Registrador*, supra, dijimos que:

> ". . . [C]uando se haga un llamamiento en parte alícuota, cualquiera que sea la fórmula empleada por el testador y aunque éste haya empleado la palabra legado, al disponer de una cuota abstracta, de una unidad ideal —independiente de su contenido material—, el testador ha revelado que su intención fue transmitir una universalidad, realizar una transmisión a título universal, y, por consiguiente designar un heredero." (Énfasis suprimido.)

Los tratadistas españoles se han manifestado sobre el legado de parte alícuota bajo diferentes tesis, unos apoyan la tesis subjetivista y otros la tesis objetivista. En *Vivaldi v.*

*Registrador*, supra, pág. 641, adoptamos la tesis objetivista al hacer el pronunciamiento siguiente:

Del mismo modo, *cuando se haga un llamamiento en parte alícuota, cualquiera que sea la fórmula empleada por el testador y aunque éste haya empleado la palabra legado, al disponer de una cuota abstracta, de una unidad ideal —independiente de su contenido material—, el testador ha revelado que su intención fue transmitir una universalidad, realizar una transmisión a título universal, y, por consiguiente, designar un heredero.* No debe olvidarse que, como dice Danz, los *resultados jurídicos* no se producen porque la voluntad interesada los persiga, sino porque el Derecho objetivo los atribuye a aquellas declaraciones de los particulares mediante las cuales éstos se proponen realizar determinados fines económicos o sociales. (Énfasis nuestro.)

De manera que lo determinante es que se transmita la universalidad de la herencia. De igual manera se expresa A. M. Borrell y Soler en su obra *Derecho Civil Español*, Barcelona, Ed. Bosch, T. V, págs. 198–199:

La R. de 4 de noviembre de 1935 adoptó un criterio distinto, considerando al legatario como un heredero. Dice que así en la doctrina moderna como en las legislaciones extranjeras se considera el legado de herencia "como una disposición de carácter universal, hasta el punto de entenderse que no ostenta la cualidad de heredero el llamado con esta denominación a quien no se atribuye la adquisición del patrimonio del *de cujus*, y sí al que lo adquiere en su totalidad o en una porción matemática, aunque no haya sido llamado heredero, ya que la institución no debe ir unida a las palabras, sino que deriva de la substancia de la misma disposición, de tal manera que cualesquiera que sean las expresiones empleadas por el testador será reconocido como heredero el sucesor en la universalidad de los bienes o una cuota parte de ellos, teniendo toda otra persona favorecida la cualidad de legatario".

De modo que, según esta doctrina, no es la voluntad subjetiva del testador la que, empleando la palabra heredero o la de legatario, lo que hace que un legado sea tal o que sea una

verdadera institución de heredero; sino que debe atenderse objetivamente a la naturaleza de la cosa que deja el testador y ésta consiste en una o más cosas corporales, otorga un legado; y si consiste en toda o una parte alícuota de la universalidad de la herencia, le instituye heredero, aunque el testador crea hacerle un legado.

Recientemente reafirmamos la tesis objetivista en *Torre Ginés v. E.L.A.*, 118 D.P.R. 436, 454–456 (1987), donde hicimos los pronunciamientos siguientes al discutir la jurisprudencia sobre el legado parciario:

> . . . Proclaman una posición objetivista, esto es, la calificación del llamamiento de herederos o de legatario va a depender del contenido objetivo de la disposición testamentaria: será heredero aquél en cuyo favor se dispone de la universalidad, o una cuota o porción aritmética de la herencia, y legatario, aquél a favor de quien se disponen bienes específicos o determinados de la herencia. . . . También aclaramos que "en la duda, aunque el testador no haya usado materialmente la palabra heredero, si su voluntad está clara acerca de este concepto, valdrá la disposición como hecha a título universal o de herencia". (Énfasis suprimido.)

En el caso de autos, al abuelo legarle a sus nietos el tercio de mejora y el tercio de libre disposición de *todos sus bienes*, le hace un llamamiento a la universalidad de su herencia, aunque los llame legatarios. Se desprende de la cláusula séptima del testamento abierto, que él quería dejarle a sus nietos la parte mayor de su herencia y esto lo reafirma la cláusula octava, donde le deja el *remanente* de sus bienes a sus dos hijos, Carlos F. Cintrón Vélez y José Tomás Cintrón Ramírez, a quienes menciona como sus herederos. Podemos observar que les deja a éstos lo que corresponde en derecho el tercio de estricta. Don Fernando quiso, dentro de lo posible, dejar a sus nietos bien establecidos económicamente sin privar a sus hijos de lo que en derecho les pertenecía. Recordemos que al resolver la controversia, debemos cumplir con

la voluntad del testador. *Fernández. Franco* v. *Castro Cardoso*, 119 D.P.R. 154 (1987).

". . . [E]n el Derecho moderno, no es el nombramiento de heredero la causa de la adquisición del 'universum jus', sino la disposición a título universal la que atribuye la condición de heredero, por lo que ha desaparecido la figura del 'legatum partitionis', ya que será heredero aquel a quien se atribuya una cuota parte de la herencia, independientemente de las palabras empleadas por el testador." F. Bonet Ramón, *Compendio de Derecho Civil*, Madrid, Ed. Rev. Privado, 1965, T. V, Sucesiones, pág. 408.

■ Aunque el testador en este caso utilizó la palabra "legatario", hizo un llamamiento a la universalidad de sus bienes y por tal motivo concluimos que los nietos del testador son sus herederos.

■ Por otro lado, don Fernando podía transmitirle a sus nietos los tercios de mejora y de libre disposición. En *Dávila* v. *Agrait*, 116 D.P.R. 549 (1985), resolvimos que la mejora ha de establecerse de modo expreso y que a tenor con los Arts. 737 y 751 del Código Civil, 31 L.P.R.A. secs. 2363 y 2391,[1] el tercio de mejora implica libertad de disposición del causante dentro del grupo de descendientes legítimos. Por ello se puede mejorar a un nieto aunque viva su padre, esto es, que pueden ser mejorados los descendientes legí-

---

[1] El Código Civil recoge el concepto legal de mejora en su Art. 737 del modo siguiente:

.    .    .    .    .    .    .    .

"Sin embargo, podrán éstos disponer de una parte de las dos que forman la legítima, para aplicarla como mejora a sus hijos y descendientes legítimos o naturales legalmente reconocidos." 31 L.P.R.A. sec. 2393.

Y en el Art. 751:

"El padre o la madre podrán disponer a favor de alguno o algunos de sus hijos o descendientes de una de las dos terceras partes destinadas a [la] legítima." 31 L.P.R.A. sec. 2391.

timos siendo éstos los hijos, nietos y biznietos; *Díaz Lamoutte* v. *Luciano*, 85 D.P.R. 834 (1962).

Así lo hizo el testador en este caso, mejoró a sus nietos expresamente, aun cuando el padre de éstos vivía al otorgarse el testamento.

## II

El segundo error planteado por los recurrentes surge del hecho de que los recurridos vivieron en la casa del causante, su abuelo, antes y después de su muerte. Por lo tanto, sostienen que debían la renta de la casa a los restantes herederos. Este problema hay que discutirlo según la doctrina de la comunidad hereditaria.

■ La comunidad hereditaria surge cuando son más de uno los herederos llamados a una sucesión. Cada uno de ellos, mientras la partición no se efectúa, no tiene derecho concreto sobre ninguna de las cosas de la herencia, sino simplemente un derecho en el complejo hereditario. J. Castán Tobeñas, *Derecho Civil español común y foral*, 8va ed., Madrid, Ed. Reus, 1978, T. VI, Vol. 1, pág. 295.

■ "La comunidad comprende todas las relaciones jurídicas patrimoniales del difunto, excepto aquellas que por su naturaleza o por su contenido se extinguen con la muerte de la persona a la que están adheridas, es decir, todo elemento patrimonial activo o pasivo correspondiente a los sucesores, estado de comunidad del que sale en todo caso mediante la división o partición de la herencia." Bonet Ramón, *op. cit.*, pág. 805.

■ La comunidad hereditaria se inicia con la apertura de una herencia a la que están llamados varios herederos y termina por la división o partición. Es en el momento de la liquidación de la universalidad patrimonial y la adjudi-

cación de bienes cuando se le confiere a cada heredero la propiedad exclusiva de los bienes hereditarios que le corresponden y, por lo tanto, deja de existir la comunidad hereditaria.

██ Al igual que el Código Civil de Puerto Rico, Castán Tobeñas expresa que "[l]a doctrina tradicional, y lo mismo el Código Civil, sólo contemplan la comunidad hereditaria en su fase o momento de terminación por la partición, desentendiéndose de la regulación específica de la misma. Esto explica en gran parte los problemas y los debates que en torno a la indivisión hereditaria, carente de regulación legal, se han producido". Castán Tobeñas, *op. cit.*, pág. 296. Por no tener nuestro Código Civil normas específicas que regulen la comunidad hereditaria debemos regirnos "por las disposiciones imperativas del Código civil; luego, por la voluntad del causante; luego, por las disposiciones que, dentro del título de la división de la herencia, le [sean] . . . aplicables; y, [por último], por las disposiciones generales contenidas en el [capítulo sobre comunidad de bienes], en lo que fueren compatibles con ser la here[ncia] una comunidad universal". J.L. Lacruz Berdejo y F. Sancho Rebullida, *Elementos de Derecho Civil, Derecho de Sucesiones*, Barcelona, Librería Bosch, 1981, T. V, pág. 184; M. Albaladejo, *Derecho Civil*, Barcelona, Librería Bosch, 1979, T. V, Vol. I, pág. 270; Castán Tobeñas, *op. cit.*, pág. 296; Bonet Ramón, *op. cit.*, pág. 811.

██ Con relación a la responsabilidad entre los coherederos durante la indivisión de la herencia dispone el Art. 1016 del Código Civil, 31 L.P.R.A. sec. 2882, equivalente al Art. 1.063 del Código Civil español, que: "Los coherederos deben abonarse recíprocamente en la partición de las rentas y frutos que cada uno haya percibido de los bienes heredita-

rios, las impensas útiles y necesarias hechas en los mismos, y los daños ocasionados por malicia o negligencia." Los tratadistas interpretan este artículo como que "[l]a relación ... no es entre los coherederos, sino entre cada coheredero que haya poseído bienes de la herencia, y el caudal relicto, que recibe el importe de los frutos y daños y suministra los fondos para el pago de las impensas". Lacruz Berdejo y Sancho Rebullida, *op. cit.*, pág. 140, indican que "el art. 1.063 no se aplica a la posesión individual de buena fe, pues los frutos no se han percibido entonces como pertenecientes a la herencia, y conforme al art. 451 Cc. no deben restituirse". (Escolio omitido.)(2)

▬▬▬ Ferrandis Vilella en su obra *La Comunidad Hereditaria*, Barcelona, Ed. Bosch, 1954, pág. 204, comenta que el Art. 1.063 consagra la responsabilidad de los coherederos por enriquecimiento injusto. Esta no es la situación del caso ante nuestra consideración y es por eso que no le es de aplicación el citado artículo; aquí aunque los nietos coherederos forman parte de la comunidad hereditaria y poseyeron la casa del causante después de su muerte, esa fue la vivienda de ellos por varios años antes de la muerte del testador, o sea, que tenían la posesión exclusiva de la casa desde antes. Sobre este particular se manifestó el tratadista Albaladejo, *op. cit.*, pág. 272: "Los comuneros tienen derecho a coposeer los bienes comunes y a servirse de los mismos, se-

---

(2) El Art. 451 del Código Civil español es equivalente al Art. 380 de Puerto Rico, 31 L.P.R.A. sec. 1466.

*"1466. Propiedad de los frutos percibidos*

"El poseedor de buena fe hace suyos los frutos percibidos mientras no sea interrumpida la posesión.

"Se entienden percibidos los frutos naturales o industriales desde que se alzan o separan.

"Los frutos civiles se consideran producidos por días, y pertenecen al poseedor de buena fe en esa proporción."

gún las reglas sobre el uso de la cosa común por los condueños, reglas que permiten utilizar totalmente a cualquiera de ellos cuando no lo estén haciendo los demás." (Escolios omitidos.) Reconoce este autor casos en que, como el de autos, se le debe reconocer a los coherederos la posesión exclusiva. La teoría general sobre este punto es la siguiente:

> Ahora bien, se trata, en el fondo, de poner de relieve que el *derecho a poseer* no es exclusivo de ningún comunero, sino que todos tiene derecho a *coposeer*. Mas siendo innegable que pueden coposeer efectivamente, pero que también no (es decir, que pueden no tener en su poder real todos los comuneros simultáneamente todas las cosas), lo que la jurisprudencia esa intenta es expresar que la tenencia real de alguna cosa común por un comunero solo, antes que ser considerada como posesión para él, debe de serlo como caso de ejercicio de la posesión de todos a través de él (servidor de la posesión de los demás, aparte de poseedor para sí por su parte) o como caso de posesión mediata de los demás a través de la posesión inmediata suya. Todo ello, *no obsta, sin embargo, a que cuando conste que el comunero poseedor, posee para sí, y no (también) como servidor de la posesión de los otros o mediador posesorio de los mismos, se le reconozca la posesión exclusiva a él de la cosa que sea* (con los efectos consiguientes *para él*, como *adquisición de frutos*, usucapión, etc.), si bien a los otros, mientras estén en plazo, les quepa mediante interdicto o acción reivindictoria, recobrar la parte de posesión a que tienen derecho. (Énfasis nuestro y escolio omitido.) Albaladejo, *op. cit.*, pág. 273.

██ Explica, además, Albaladejo "[q]ue la posesión es exclusiva de un comunero, con frecuencia se verá más nítidamente si la tenía de antes de morir el causante, y continuándola después, no será él el que tenga que probar que ha comenzado, con posterioridad de ser comunero, a poseer para sí exclusivamente". Albaladejo, *op. cit.*, pág. 274. La jurisprudencia española, en la sentencia de 17 de abril de 1958, plantea una situación igual a la del caso ante nos. Se

trata de un hijo que vivía con su madre desde antes de la muerte de ésta y el resto de los herederos, sus hermanos, ejercitan contra él una acción de desahucio. El tribunal español resuelve a favor del heredero que vivía con la madre, le deja permanecer en la casa sin tener que pagar rentas a los coherederos y le reconoce la posesión de la casa hasta el momento de la partición. De igual manera se ha de resolver en el caso ante nos, donde los recurridos vivían y acompañaron a sus abuelos por varios años e incluso con la ayuda de su madre cuidaron de éstos durante su enfermedad.

Al decidir de esta manera no privamos a los recurrentes de ningún derecho, ya que al momento de la partición recibirán el tercio de la herencia del causante que por ley les corresponde. Los recurridos estuvieron de acuerdo con que se vendiera la casa en pública subasta y así se estipuló por las partes, pero no por esto se les va a imponer la obligación de pagarle una renta a su propio padre, por el tiempo que vivieron en la casa de los abuelos, sin tener otro lugar donde vivir.(3)

*Se expedirá el auto y se dictará sentencia que confirme la dictada por el Tribunal Superior, Sala de Mayagüez.*

El Juez Asociado Señor Rebollo López no intervino.

---

(3) Cumplimos así con el mandato legal y a la vez hacemos justicia. *Cruz Cruz v. Irizarry Tirado*, 107 D.P.R. 655 (1978).