EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Olga Margarita Molina González<br><br>Recurrida<br><br>v.<br><br>Héctor Álvarez Gerena<br><br>Peticionario | Certiorari<br><br>2019 TSPR 191<br><br>203 DPR ____ |

Número del Caso: CC-2017-832

Fecha: 3 octubre de 2019

Tribunal de Apelaciones:

   Región Judicial de Mayagüez – Utuado, Panel XI

Abogado de la parte peticionaria:

   Lcdo. Jorge A. Hernández

Abogado de la parte recurrida:

   Lcdo. Joaquín Martínez García

Materia: Derechos reales - Determinar a partir de qué momento el comunero/heredero que ostenta el uso y disfrute exclusivo del bien común, debe compensar a otro comunero/heredero que alega haber sido privado de su derecho propietario

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Olga Margarita Molina González<br><br>Recurrida<br><br>v.<br><br>Héctor Álvarez Gerena<br><br>Peticionario | **Núm.** CC-2017-0832 | |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 3 de octubre de 2019

El caso de epígrafe presenta la particularidad de una comunidad ordinaria que está compuesta por dos comuneros/herederos con distintos causantes, cuyos respectivos caudales hereditarios no han sido objeto de partición. Esta situación resulta en que -sobre un solo bien inmueble- graviten derechos hereditarios distintos y se constituya una comunidad, cuya división es objeto de la presente controversia. Es en ese contexto que debemos evaluar bajo qué circunstancias -y a partir de qué momento- el comunero/heredero que ostenta el uso y disfrute exclusivo del bien común debe compensar al otro comunero/heredero que alega haber sido privado de su derecho propietario

I.

El Sr. Juan González Chanza estuvo casado con la Sra. María Álvarez Valentín y, durante la vigencia del matrimonio, adquirieron ciertos bienes, incluyendo la finca que origina la controversia ante nuestra consideración. El

señor González Chanza y la señora Álvarez Valentín fallecieron sin tener herederos forzosos. No obstante, el señor González Chanza otorgó testamento abierto el 11 de febrero de 1992. Mediante éste, legó todos sus bienes al aquí peticionario, el Sr. Héctor Álvarez Gerena. La señora Álvarez Valentín, por su parte, otorgó testamento abierto el 18 de diciembre de 1996 y legó todos sus bienes a la aquí recurrida, la Sra. Olga Margarita Molina González.[1] El señor González Chanza falleció el 7 de febrero de 1994 y, a partir de entonces, el señor Álvarez Gerena, pasó a ostentar un derecho hereditario sobre los bienes de su causante, entre los cuales se encontraba una finca perteneciente al matrimonio y. El señor Álvarez Gerena convivió con la señora Álvarez Valentín en dicha finca hasta que ésta falleció el 15 de junio de 2001.

El 20 de julio de 2005, la señora Molina González presentó una demanda ante el Tribunal de Primera Instancia en la que alegó que, antes del fallecimiento de la señora Álvarez Valentín, el señor Álvarez Gerena se había apoderado de la totalidad de la finca sobre la cual tenía un derecho hereditario. Según arguyó, el señor Álvarez Gerena tenía el disfrute exclusivo de la propiedad y se había lucrado de ese uso al alquilar parte de ésta para generar ingresos.

---

[1] Aunque el señor Álvarez Gerena y la señora Molina González fueron denominados como legatarios en los testamentos de sus respectivos causantes, cabría pensar que, al legársele todos los bienes, nos encontramos más bien ante llamamientos como herederos a título universal. *Véase* Luis Roca-Sastre, Derecho de Sucesiones, Tomo I, 2da ed. Cap.4 (1994).

Asimismo, sostuvo que el peticionario había intentado inscribir la finca únicamente a su nombre en el Registro de la Propiedad. Por tal razón, solicitó al foro primario que llevara a cabo la división correspondiente y le adjudicara su participación del cincuenta por ciento (50%) de la comunidad. Además, la señora Molina González solicitó que se ordenara al señor Álvarez Gerena pagarle por el uso que le había dado a la propiedad, así como parte de la renta que había generado alquilando la misma.

El señor Álvarez Gerena contestó la demanda y negó tener el uso exclusivo de la propiedad. Por el contrario, alegó que, luego del fallecimiento del señor González Chanza, se había mudado a la propiedad junto con su esposa para cuidar y atender a la señora Álvarez Valentín sin recibir paga alguna por esos servicios. Según indicó, permaneció en la finca luego del fallecimiento de ésta para cuidar y proteger la propiedad de la que era comunero y en la cual había realizado mejoras con trabajo y dinero propio. Negó haber alquilado la propiedad y consignó no tener objeción en que se adjudicara a favor de la señora Álvarez Gerena el cincuenta por ciento (50%) del valor de la finca, luego de que ésta fuese tasada y se le acreditaran las mejoras realizadas.[2]

---

[2] Según alegó, dichas mejoras consistían de una segunda planta que constaba de tres (3) habitaciones, sala, cocina, comedor, dos (2) baños y un balcón. También alegó que había realizado mejoras en la cocina, entrada y balcón de la vivienda original.

Posteriormente, la señora Molina González enmendó su demanda para, entre otras cosas,[3] describir la propiedad y solicitar que se adjudicara una renta mensual del valor de ésta y se le concediera un crédito de la mitad de esa cuantía por todos los años que el señor Álvarez Gerena había vivido en la finca. El señor Álvarez Gerena, por su parte, contestó la demanda enmendada y presentó una reconvención. Mediante esta última, alegó que se había encargado del mantenimiento de la propiedad desde el 1994 sin que la señora Molina González ni la difunta señora Álvarez Valentín contribuyeran de forma alguna.

En su reconvención, el señor Álvarez Gerena indicó que los gastos de mantenimiento de la propiedad por todos esos años se estimaban en $30,000.00, por lo que la señora Molina González le adeudaba $15,000.00. Asimismo, sostuvo que había fungido como administrador de la propiedad desde el 1994 y no había recibido remuneración alguna en concepto de ello. Por tanto, solicitó que se le ordenara a la señora Molina González satisfacer la suma de $301,600 por los gastos de administración del inmueble. Por último, solicitó al tribunal que ordenara el rembolso de los gastos en los que había incurrido relacionados con el sepelio de la señora

---

[3] Surge de la demanda enmendada que el valor de la finca era de $130,000.00. En su demanda original, la señora Molina González había indicado que la propiedad tenía un valor de $200,000.00. El valor en el mercado de la propiedad, luego de que se llevara a cabo una tasación ordenada por el Tribunal de Primera Instancia fue de $132,000.00. Esa tasación fue estipulada por las partes. *Véase* Ap. en la pág. 28.

Álvarez Valentín; a saber, $5,000.00. Por último, informó que la propiedad objeto del pleito adeudaba $12,101.84 en concepto de contribución sobre la propiedad inmueble, por lo que procedía que se ordenara a la señora Molina González pagar la mitad de esa cuantía.

Luego de la celebración del juicio en su fondo y un extenso desfile de prueba, el Tribunal de Primera Instancia dictó una sentencia mediante la cual ordenó al señor Álvarez Gerena pagar a la señora Álvarez Valentín $66,000.00 por su participación en la propiedad, más la suma de $78,650.00 por el beneficio que ésta debió haber recibido en concepto de rentas "por los últimos veinte (20) años, para un total de $144,650.00". Sentencia del TPI, en la pág. 7, Ap. en la pág. 53. Además, ordenó al Registrador de la Propiedad inscribir la finca objeto del pleito a nombre de la señora Molina González en un cincuenta por ciento (50%) y a nombre del señor Álvarez Gerena en la misma proporción. *Véase id.* Al así proceder, el foro primario concluyó que el señor Álvarez Gerena se había apoderado de la propiedad desde el año 1994 como su único dueño y no había permitido a la señora Molina González utilizarla. Además, concluyó que el señor Álvarez Gerena no había realizado mejoras a la propiedad ni había realizado gestiones como administrador. Consiguientemente, declaró *no ha lugar* la reconvención presentada, por entender que no se presentó prueba alguna para sustentar las alegaciones contenidas en ésta.

Insatisfecho con tal dictamen, el señor Álvarez Gerena presentó una reconsideración en la que cuestionó que se ordenara el pago de renta a favor de la señora Molina González por los últimos veinte (20) años sin tomar en consideración que la señora Álvarez Valentín había fallecido en el año 2001. Además, señaló que el foro primario no había incluido en sus determinaciones de hecho la fecha exacta en la que la señora Molina González había reclamado el pago de cánones o el uso de la propiedad común. Alegó que en ningún momento la señora Molina González le solicitó formalmente el pago de una renta. Por último, sostuvo que de la tasación de la propiedad se desprendía que el valor del terreno había aumentado con la construcción de una segunda planta. Específicamente, sostuvo que de la tasación surgía de manera clara que el valor de la estructura original existente en la finca en el año 1994 -cuando falleció el señor González Chanza- era $29,000.00 y que el valor del terreno es de $32,600.00, por lo que a la señora Molina González sólo le correspondía la mitad de la suma de esas cuantías.[4]

Luego de que el foro primario declarara no ha lugar su reconsideración, el señor Álvarez Molina acudió ante el Tribunal de Apelaciones y planteó que el foro primario había errado al: (1) imponerle el pago de renta por los últimos

---

[4] Posteriormente, el señor Álvarez Gerena presentó una *Solicitud de Nuevo Juicio* en la que alegó que había encontrado prueba testifical acreditativa de las mejoras que realizó en la propiedad. Indicó que no había podido presentar esa prueba en el juicio puesto que había perdido contacto con el testigo. El foro primario declaró *no ha lugar* la referida solicitud.

veinte (20) años sin hacer una determinación respecto a cuándo la señora Molina González había solicitado dicho pago; (2) no considerar el segundo piso de la estructura que ubicaba en la finca como una mejora según surgía de la tasación, y (3) no imponer a la señora Álvarez Molina gastos relacionados con la conservación y administración del inmueble. *Véase* Apelación, en la pág. 3, Ap. en la pág. 6; Sentencia del TA, en la pág. 2. El foro apelativo intermedio, sin embargo, confirmó en su totalidad el dictamen del Tribunal de Primera Instancia. La reconsideración presentada fue igualmente denegada.

Así las cosas, el señor Álvarez Gerena acudió a este Tribunal por vía de un recurso de *certiorari*.[5] Mediante éste, el señor Álvarez Gerena insistió en la improcedencia de ordenarle pagar una cuantía en concepto de rentas por el uso del inmueble para un periodo en el que la señora Molina González ni tan siquiera era comunera, puesto que la señora

---

[5] En éste, planteó los siguientes señalamientos de error:

> Erró el honorable Tribunal de Apelaciones al avalar la sentencia del Tribunal de Primera Instancia en su determinación, al imponer al demandado el pago de renta por los últimos veinte (20) años a favor de la demandante, cuando ni de la sentencia ni de las determinaciones de hecho de la misma se desprende cuándo la demandante solicitó formalmente el pago de renta al demandado o la existencia de un pacto entre ellos.

> Erró el Tribunal de Apelaciones al avalar la determinación del Tribunal de Primera Instancia de no reconocer y no imponer a la parte demandante una cuantía correspondiente a los gastos de conservación y de administración a favor de la parte demandada.

Álvarez Valentín no falleció hasta el año 2001. Alegó, además, que la señora Molina González nunca le solicitó el pago de una renta o exigió su derecho al uso y disfrute de la propiedad, derecho que, según sostiene, nunca se le negó.

Examinada la petición de *certiorari* presentada, el 23 de febrero de 2018, emitimos una resolución mediante la cual le concedimos a la parte recurrida un término de treinta (30) días para que compareciera y mostrara causa por la cual no debíamos expedir el recurso presentado para revisar el primer señalamiento de error y revocar a los foros recurridos en cuanto a éste.

En cumplimiento con dicha resolución, la parte recurrida presentó su *Oposición al recurso de certiorari*. En ésta, la señora Molina González plantea que, de conformidad con las conclusiones del foro primario, no era necesario que ésta realizara un requerimiento de pago en concepto de rentas por el uso de la propiedad objeto del pleito. En la alternativa, sostiene que la propia presentación de la demanda en el año 2005 equivale a un requerimiento de pago. Para sostener su posición, arguye que de las determinaciones de hecho del foro primario surge que el señor Álvarez Gerena se apoderó de la propiedad desde el año 1994 y que disfrutó de su uso por más de veinte (20) años sin pagarle renta. Aduce que la doctrina es clara en que la exclusión por parte de un comunero de los demás comuneros del uso y disfrute del bien acarrea una compensación a favor de los comuneros excluidos.

Contando con el beneficio de la comparecencia de ambas partes, procedemos a dirimir la controversia relacionada con el primer señalamiento de error. Para ello, resulta indispensable examinar las reglas que rigen la comunidad de bienes en nuestro ordenamiento jurídico y los deberes y responsabilidades de los comuneros de un bien hacia los demás miembros de la comunidad.

## II.

La figura de la comunidad de bienes está regulada por el Título III de nuestro Código Civil. El Artículo 326 de ese cuerpo establece que existe una comunidad de bienes "cuando la propiedad de una cosa o de un derecho pertenece *pro indiviso* a varias personas". 31 LPRA sec. 1271. La distribución de la comunidad se rige por una presunción de igualdad en la participación y el concurso de sus partícipes, tanto en los beneficios como en las cargas, será proporcionado a sus respectivas cuotas. 31 LPRA sec. 1272. Así, pues, una comunidad de bienes sobre un derecho propietario se caracteriza por la pertenencia de una cosa corporal por una pluralidad de sujetos en cuotas cualitativamente iguales. *Véase* Eduardo Vázquez Bote, II *Derechos Reales* en la pág. 9 (1993). En nuestro ordenamiento, la comunidad se concibe como una de procedencia romana en la que cada comunero tiene una cuota alícuota de la cosa. Véase José R. Vélez Torres, *Derecho de Obligaciones*, en la pág. 145 (2da ed. 1997).

En cuanto a uso de los bienes de la comunidad, el Artículo 328 del Código Civil dispone que "[c]ada partícipe podrá servirse de las cosas comunes, siempre que disponga de ellas conforme a su destino y de manera que no perjudique el interés de la comunidad, ni impida a los copartícipes utilizarlas según su derecho". 31 LPRA sec. 1273. De otra parte, el Artículo 329 pauta las obligaciones de los partícipes de la comunidad en los gastos de conservación de ésta. A esos efectos, establece que "[t]odo copropietario tendrá derecho para obligar a los partícipes a contribuir los gastos de conservación de la cosa o derecho común". 31 LPRA sec. 1274.

En el pasado, este Tribunal ha tenido múltiples oportunidades de examinar el alcance de estas disposiciones. En *De la Fuente v. A. Roig Sucesores*, 82 DPR 514 (1961), se determinó que el uso de un bien común para el beneficio exclusivo de uno de los comuneros conlleva el pago de una compensación a la comunidad. *Véase Id.* en la pág. 534. Cónsono con esto, este Foro concluyó que un comunero estaba impedido de tener el uso y disfrute exclusivo de un bien perteneciente a la comunidad sin pagarle a los demás comuneros por ese beneficio individual. En aquella ocasión, se destacó que la obligación de resarcir a los demás comuneros era "uno de los principios rectores de un régimen pacífico y justo de la comunidad". *Id.* A pesar de esta conclusión, en *De la Fuente*, este Tribunal determinó que la comunera-demandante no había presentado prueba suficiente

para que se pudiera fijar una compensación en concepto de los presuntos daños que alegó haber sufrido por razón del uso y disfrute exclusivo de uno de los bienes de la comunidad. Por tal razón, se confirmó el dictamen recurrido que declaró *sin lugar* la demanda de daños y perjuicios incoada.

De otra parte, en *Cintrón Vélez v. Cintrón de Jesús*, 120 DPR 39 (1987), este Tribunal tuvo la oportunidad de examinar los deberes y obligaciones de los comuneros en el contexto particular de una comunidad hereditaria. Allí, unos coherederos residieron en una propiedad que pertenecía al causante antes y después del fallecimiento de éste. Los coherederos que no residían en la referida propiedad solicitaron un pago en concepto de su participación en el inmueble. Según alegaron, los demás coherederos se habían apoderado de los bienes de la comunidad y los habían disfrutado para su exclusivo beneficio. Ante ese cuadro fáctico, pesó en el ánimo de este Tribunal el hecho de que los coherederos, quienes eran nietos del causante, habían vivido con su abuelo previo a su fallecimiento y lo habían cuidado durante su enfermedad. Así, este Foro razonó que, aunque los nietos coherederos formaban parte de la comunidad hereditaria "y poseyeron la casa del causante después de su muerte, esa fue la vivienda de ellos por varios años antes de la muerte del testador, o sea que tenían la posesión exclusiva de la casa desde antes". *Id*. en la pág. 50.

Al examinar la procedencia de imponer a los coherederos que residían en el inmueble que componía la comunidad la obligación de pagar una renta a los demás comuneros por su uso y disfrute exclusivo, este Tribunal evaluó detenidamente las normas que rigen la comunidad y la posesión en el Derecho Civil. Como parte de ese análisis, determinó que, si bien el derecho a poseer no es exclusivo de ningún comunero, la posesión por parte de los coherederos que habían tenido el uso y disfrute exclusivo de la residencia previo al fallecimiento del causante no conllevaba un pago a los demás coherederos en concepto de su participación. *Véase Cintrón Vélez*, 120 DPR en la pág. 51. Específicamente, el Tribunal razonó que "la tenencia real de alguna cosa común por un comunero solo, antes que ser considerada como posesión para él, debe de serlo como caso de ejercicio de la posesión de todos a través de él (servidor de la posesión de los demás, aparte de poseedor para sí por su parte)". *Id.* en la pág. 51.[6]

Posteriormente, en *Soto López v. Colón Meléndez*, 143 DPR 282 (1997), este Tribunal dictaminó -en el contexto particular de una comunidad post ganancial- que cuando un

---

[6] Es decir, la posesión del bien inmueble por parte de los coherederos previo a la partición de la herencia no constituía propiamente una exclusión de los demás, máxime cuando éstos se encontraban utilizando exclusivamente el inmueble con anterioridad a la muerte del causante. Se reconoció, sin embargo, que, en el caso de una posesión exclusiva, los demás comuneros tendrían a su haber un interdicto o acción reivindicatoria para recobrar parte de la posesión a la que tenían derecho. *Véase Cintrón Vélez*, 120 DPR en la pág. 51.

comunero mantiene un monopolio sobre el bien común, negando al otro su derecho al disfrute de éste, el comunero excluido tendrá derecho a recibir una suma líquida de manera periódica en concepto de su participación en la comunidad. Según se explicó, ese derecho como comunero era superior al derecho a solicitar una pensión excónyuge al amparo del Artículo 109 del Código Civil, 31 LPRA sec. 385. *Véase Soto López*, 143 DPR en la pág. 291. En ese caso, tanto el foro primario como el Tribunal de Apelaciones se negaron a ordenar el pago de una pensión excónyuge bajo el fundamento de que no existía necesidad económica y que los bienes gananciales -de los cuales la excónyuge que solicitaba la pensión era dueña de la mitad- sobrepasaban los $500,000.00.

La excónyuge a quien se le negó una pensión planteó ante este Tribunal que su otrora esposo actuaba como administrador *de facto* de la comunidad de bienes, por lo que ella tenía derecho a que se le asignara una pensión. Al evaluar ese argumento, este Foro concluyó que el control absoluto de un comunero de la comunidad conllevaba necesariamente la negación del derecho al uso y disfrute de la otra comunera. *Véase Soto López*, 143 DPR en la pág. 291. Por tanto, si bien la excónyuge excluida del uso y disfrute del bien común no tenía derecho al pago de una pensión excónyuge, sí tenía derecho al pago de una suma líquida periódica en concepto de su participación en la comunidad post ganancial. *Id.* en la pág. 292. Este Tribunal aclaró, sin embargo, lo siguiente:

> Si con el pago de la suma que razonablemente reclama la recurrente para su adecuado sostén se excede la cantidad a la que por frutos ella tiene derecho en calidad de comunera, se procederá eventualmente a descontar dicho exceso, de lo que en su día recibirá al efectuarse la partición.

*Id.* en la pág. 292.

Es decir, el Tribunal determinó que, al momento de efectuarse la partición de la comunidad, se evaluaría si esos pagos periódicos a favor de uno de los comuneros, en conjunto, excedían su participación total en la comunidad. De ser así, correspondía descontar ese exceso de la mitad del valor de los bienes de la comunidad.

Expresiones posteriores por parte de este Tribunal sobre el deber de un comunero de compensar a los demás por el uso exclusivo del bien común también se han dado en el contexto de comunidades post gananciales o en situaciones análogas. En *Díaz v. Aguayo*, 162 DPR 801 (2004), por ejemplo, una comunera reclamó al otro comunero un pago en concepto del uso y disfrute exclusivo de los bienes comunes. En ese caso, pudimos abordar de manera puntual el efecto de ese uso y disfrute en el cómputo final del crédito que le corresponde a cada comunero al dividir la comunidad. Concretamente, los comuneros en *Díaz v. Aguayo* habían sostenido una relación de noviazgo durante la cual obtuvieron ciertos bienes, entre ellos una residencia sobre la cual cada uno obtuvo una participación del cincuenta por ciento (50%). Al finalizar la relación de noviazgo, el señor Aguayo asumió los pagos de la hipoteca y, posteriormente, se mudó a la residencia con su esposa.

La señora Díaz, por su parte, presentó una demanda sobre división de bienes y cobro de dinero en la que alegó que el señor Aguayo debía compensarla por el uso exclusivo del bien inmueble que poseían en común. El foro primario, al efectuar el cálculo correspondiente a la división de la comunidad, determinó que la señora Díaz adeudaba al señor Aguayo la mitad de los pagos mensuales de la hipoteca que éste había realizado a través de los años. Insatisfecha, la señora Aguayo planteó ante el Tribunal de Apelaciones que el foro de instancia había errado al reconocerle un crédito al señor Díaz por el pago del préstamo hipotecario, cuando éste había retenido el uso y disfrute exclusivo de los bienes en comunidad. El Tribunal de Apelaciones, al confirmar el dictamen recurrido, concluyó que el señor Aguayo había poseído el bien inmueble en representación de la comunidad y que la señora Díaz no se había opuesto a esa posesión ni había interpuesto un recurso interdictal para reclamar su derecho al uso y disfrute del bien.

Aún insatisfecha, la señora Díaz acudió ante este Tribunal y planteó que el foro apelativo intermedio había errado al dictaminar que el uso y disfrute exclusivo del bien común por parte del señor Aguayo constituía una posesión a nombre de ambos comuneros. Luego de un análisis exhaustivo del derecho y la jurisprudencia aplicable, este Tribunal revocó el dictamen del Tribunal de Apelaciones y concluyó que "el uso exclusivo de un bien común por uno sólo de los comuneros sin resarcir al otro es contrario a principios

elementales de derecho, basados en la equidad, que no permiten el enriquecimiento injusto". *Aguayo*, 162 DPR en la pág. 814. Consiguientemente, este Foro dictaminó que el señor Aguayo había poseído los bienes comunales de forma exclusiva y que tal posesión había impedido el uso y disfrute de la señora Díaz de su propiedad. Por tanto, correspondía el pago de una compensación a favor de esta última. *Id.* en la pág. 815.

Resulta preciso destacar que, en *Díaz v. Aguayo*, se señaló que "al así resolver no descartamos la posibilidad de que uno de los comuneros pueda prestar su consentimiento, expresa o tácitamente, o llegar a un acuerdo para que el otro comunero utilice gratuitamente la cosa común para su exclusivo beneficio". *Id.* en la pág. 814, n. 2.[7] Estas expresiones son cónsonas con la idea de que el uso exclusivo por parte de uno de los comuneros no siempre acarreará el pago de una compensación a los demás.

---

[7] En una Opinión de Conformidad, el ex Juez Presidente señor Hernández Denton manifestó su inquietud en torno a qué exactamente constituía privar a un comunero del uso y disfrute del bien común y destacó que "no todo uso y disfrute de la cosa común por uno de los comuneros, sin la concurrencia de los demás, implica de por sí una infracción al Art. 328 del Código Civil de la cual surja un deber de compensar". *Aguayo*, 162 DPR en la pág. 821 (J. Hernández Denton, Op. Conformidad). Citando a Scaevola, argumentó que, en ciertos casos, el hecho de que uno de los comuneros se sirva de la cosa común de manera exclusiva no necesariamente supone una exclusión de los demás. *Id.* El ex Juez Presidente también subrayó que "el comunero que es privado del uso y disfrute de su propiedad tiene derecho a ser resarcido por el que lo perjudicó conforme a criterios independientes, consecuentes y determinados. De esa manera, además, se hace justicia al que tiene que abonar el pago, pues está protegido contra decisiones arbitrarias". *Id.* en la pág. 823.

Las complejidades subyacentes al dictamen en *Díaz Aguayo* salieron a la luz en otra controversia referente a la división de una comunidad post ganancial que fue resuelta mediante sentencia, por estar igualmente dividido el Tribunal. En *Meléndez Berríos v. Maldonado Dieppa*, 175 DPR 1007 (2009), se confirmó un dictamen del Tribunal de Apelaciones mediante el cual se había determinado que una comunera que había ostentado el uso exclusivo de un bien inmueble debía compensarle al otro comunero por tal uso. Ello, a partir del momento en que se había solicitado por la vía judicial el pago de las rentas correspondientes. Según razonó el foro apelativo intermedio, no fue hasta ese momento que el comunero presuntamente excluido había exteriorizado su intención de que su excónyuge le resarciera por el uso exclusivo del inmueble.

En *Maldonado Dieppa*, el Tribunal de Apelaciones razonó que, a diferencia de los hechos en *Díaz v. Aguayo*, el comunero excluido de su participación había contraído nuevas nupcias, mientras que su excónyuge había permanecido soltera y no había impedido que éste utilizara el bien común. En la Opinión de Conformidad que acompañó la sentencia dictada por este Tribunal, se aclaró este hecho a los efectos de que, en casos de una ruptura del vínculo matrimonial, la atribución de la residencia familiar a uno de los cónyuges "no es equiparable a un acto de exclusión formal". *Maldonado Dieppa*, 175 DPR, en la pág. 1020 (Rodríguez Rodríguez, J., Op. de Conformidad). Así, pues, en ese tipo de casos, se

debía presumir que el excónyuge no residente había consentido al uso exclusivo de la residencia familiar hasta tanto éste no interpelara al otro a pagar una renta por concepto de ese uso.

**III.**

La jurisprudencia que antecede devela las dificultades inherentes a determinar a partir de qué momento se entiende que un comunero ha efectivamente excluido a otro de su participación en el bien común y, por tanto, tiene el deber de compensar. Ciertamente, ese análisis requiere un examen detenido de los hechos de cada caso y, forzosamente, que se tome en consideración la relación entre los comuneros. Como se indicó, en *Cintrón Vélez v. Cintrón de Jesús*, 120 DPR 39 (1987), pesó en el ánimo de este Tribunal el hecho de que los comuneros fuesen coherederos nietos del causante que habían residido en el bien comunitario previo a su fallecimiento y habían cuidado a éste durante su enfermedad. Así, se entendió que la posesión se daba en función de su condición como coherederos en representación de la comunidad hereditaria.

De otra parte, en casos en los que se reputa una exclusión del uso y disfrute por parte de un excónyuge, los dictámenes de este Foro reflejan maleabilidades subjetivas que han imposibilitado el desarrollo de una norma definitiva. De estos dictámenes surge con meridiana claridad, sin embargo, que, para tener derecho al pago de una compensación, el comunero que alega haber sido excluido

de su participación en la comunidad deberá identificarse un acto obstativo que suponga tal exclusión o un requerimiento afirmativo del comunero que alega ser excluido.

En el caso ante nuestra consideración, los foros recurridos concluyeron que el señor Álvarez Gerena debía compensar a la señora Molina González por haberla excluido del uso y disfrute de la propiedad de la cual ambos figuran como comuneros por los últimos veinte (20) años. Al momento en que el foro primario dictó sentencia, dicho periodo comprendía los años de 1996 al 2016. Además de ordenar el pago de una cuantía ascendente a $78,650.00 en concepto de rentas por el uso exclusivo de la propiedad durante ese periodo, el foro primario también ordenó el pago de la mitad del valor de la propiedad a favor de la señora Molina González.[8]

Mediante su dictamen, el Tribunal de Primera Instancia concluyó que la señora Molina González tenía derecho a un crédito en concepto de las rentas que hubiese tenido que satisfacer el señor Álvarez Gerena por "los veinte (20) años que ha venido utilizando la propiedad". Sentencia del TPI, en la pág. 4, Ap. en la pág. 50. El efecto de este proceder fue imponerle el deber de compensar a la señora Molina González por un periodo de tiempo en el que ésta **ni siquiera tenía el derecho al uso y disfrute de la propiedad en cuestión porque no era comunera**. Ello es así porque no fue

---

[8] No obstante, ordenó que la propiedad se inscribiera en el Registro de la Propiedad con una participación de cincuenta por ciento (50%) a su favor.

hasta el 15 de junio de 2001 -día en que falleció la señora Álvarez Valentín- que la señora Molina González heredó los bienes de su causante, los cuales incluían una participación en la residencia en cuestión.[9] Es decir, no fue hasta el 15 de junio de 2001 que entre el señor Álvarez Gerena y la señora Molina González se constituyó una comunidad ordinaria de bienes.

Luego del fallecimiento del señor González Chanza, el señor Álvarez Gerena adquirió un derecho hereditario sobre sus bienes, incluyendo la participación correspondiente a éste en el bien inmueble que compartió con la señora Álvarez Valentín. En ese momento, la comunidad existente era entre la viuda y el heredero. Una vez fallece la señora Álvarez Valentín, la señora Molina González hereda sus bienes, entre los cuales se encuentra la participación de ésta en el inmueble, lo que resulta en la creación de una nueva comunidad ordinaria compuesta de un bien común sobre el cual gravitan derechos hereditarios distintos. Es a partir del momento en que se crea esa nueva comunidad que la señora Molina González adquiere un derecho a exigir la liquidación y división de ésta en virtud de su participación sobre el bien inmueble. Por tal razón, resulta completamente

---

[9] El señor Álvarez Gerena y la señora Molina González no son coherederos de un mismo causante. Como se indicó, sus derechos hereditarios sobre el bien inmueble objeto de partición provienen de distintos causantes. Por tal razón, no podemos utilizar el análisis expuesto en *Cintrón Vélez v. Cintrón de Jesús*, 120 DPR 39 (1987) para concluir que el señor Álvarez Gerena poseyó el bien común en representación de una sucesión.

improcedente en Derecho requerirle al señor Álvarez Gerena compensarla por el presunto uso exclusivo de ese bien para periodos en que ésta ni tan siquiera ostentaba un derecho hereditario que la vinculara a la comunidad.

Por otro lado, a pesar de haber advenido comunera en el año 2001, no es hasta el 20 de julio de 2005 que la señora Molina González reclama, mediante la presentación de una demanda, la división de la comunidad y el pago de rentas correspondientes al uso exclusivo del inmueble por parte del señor Álvarez Gerena. Es a partir de este momento y hasta el momento en que se decreta la división de la comunidad, por vía de la sentencia del 27 de junio de 2016 objeto de nuestra revisión, que la señora Molina González tiene derecho al pago de una compensación en concepto del uso y disfrute exclusivo por parte del señor Álvarez Gerena de la residencia que compone la comunidad. Utilizando como base la fórmula contenida en el informe de valoración del perito Sr. Rafael Rodríguez Rivera que se presentó ante el Tribunal de Primera Instancia, dicha cuantía asciende a $42,651.00.[10]

De otra parte, en cuanto el momento a partir del cual la señora Molina González tiene derecho a ser compensada, de ningún documento en el expediente surge que ésta haya reclamado al señor Álvarez Gerena acceso al bien común y que éste se lo haya negado a partir del fallecimiento de la

---

[10] La fórmula consiste en multiplicar los 131 meses y siete (7) días transcurridos durante ese periodo por $325.00, cantidad que el perito determinó correspondía a la mitad de la renta mensual de la propiedad.

señora Álvarez Valentín y hasta el momento en que presenta la demanda e incluye tal reclamación. El expediente tampoco contiene documento alguno tendente a indicar que el uso y disfrute por parte del señor Álvarez Gerena del bien común como su residencia principal haya tenido el efecto de excluir a la señora Molina González de su participación. De hecho, ni en la demanda presentada ante el Tribunal de Primera Instancia ni en la demanda enmendada, la señora Molina González alegó haberle solicitado al señor Molina González el uso y disfrute del inmueble o el pago de una renta mensual por el presunto control exclusivo de éste.

En virtud de lo anterior, los foros recurridos erraron al determinar que el señor Álvarez Gerena debía pagar a la señora Molina González a partir del momento en que éste se mudó a la residencia de la difunta señora Álvarez Valentín. Como se dijo, en ese momento no existía una comunidad de bienes entre el señor Álvarez Gerena y la aquí recurrida, por lo que esta última no ostentaba ningún derecho o interés sobre la propiedad objeto de partición. Dicha comunidad de bienes surge a partir del año 2001, cuando la señora Molina González hereda la participación de la señora Álvarez Valentín en el bien inmueble objeto de la presente controversia. Al momento en que la señora Molina González interpone una demanda solicitando la división de esa comunidad y el pago de las rentas, en el año 2005, es que ésta tiene derecho a una compensación en concepto del uso y disfrute exclusivo del señor Álvarez Gerena del bien común.

Por último, resulta forzoso llamar la atención al hecho de que la sentencia del Tribunal de Primera Instancia, según confirmada en su totalidad por el Tribunal de Apelaciones, declara con lugar la división de la comunidad y condena al señor Álvarez Gerena a satisfacer la suma de $66,000.00 en concepto de la participación de la señora Molina González en el bien inmueble que les pertenecía en común *pro indiviso*. No obstante, en la sentencia también se ordena al Registrador de la Propiedad inscribir en el Registro la finca objeto del pleito a nombre de ambos comuneros, con una participación de cincuenta por ciento (50%) para cada uno. Tal proceder no solamente es erróneo en Derecho,[11] sino que, además, al tratarse de un bien inmueble, su inscripción exige el otorgamiento de una escritura pública.[12]

**IV.**

Por los fundamentos que anteceden, se expide el auto de *certiorari* presentado únicamente con relación al primer

---

[11] Ello, en tanto y cuanto el pago de la cuantía correspondiente a la participación de la señora Molina González por parte del señor Álvarez Gerena tiene el efecto de extinguir la comunidad sobre ese bien inmueble y adjudicarle a el aquí peticionario la titularidad sobre el mismo.

[12] Conviene recordar que, en nuestro ordenamiento registral, cualquier inscripción en el Registro deberá hacerse mediante una solicitud a esos efectos por la parte interesada. Véase Art. 16 de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210 de 8 de diciembre de 2015, 30 LPRA sec. 6024. Efectuado el pago correspondiente a la participación de la señora Molina González, corresponderá al señor Álvarez Gerena -de así desearlo- solicitar la inscripción del inmueble a su favor en el Registro de la Propiedad. Ello, luego de llevar a cabo los trámites relacionados con el tracto sucesorio que sean necesarios para evidenciar su derecho propietario.

señalamiento de error y se revoca el dictamen recurrido en lo concerniente al momento a partir del cual el señor Álvarez Gerena estaba obligado a compensar a la señora Molina González por el uso y disfrute exclusivo del bien común. Conforme a lo aquí resuelto, el señor Álvarez Gerena deberá compensar a la señora Molina González a partir del momento en la que ésta solicitó la división de la comunidad mediante la demanda que interpuso ante el Tribunal de Primera Instancia en el año 2005. A esos efectos, se modifica la compensación a $42,651.00 en concepto de rentas por el uso y disfrute exclusivo de la residencia.[13] Asimismo, se deja sin efecto la orden de inscripción del inmueble en el Registro de la Propiedad emitida por el Tribunal de Primera Instancia.

Se dictará sentencia de conformidad.

Anabelle Rodríguez Rodríguez
Juez Asociada

---

[13] Esta cuantía es adicional al pago del cincuenta por ciento (50%) del valor tasado del inmueble correspondiente a la participación de la señora Molina González en la comunidad. Conforme a las determinaciones de hecho del Tribunal de Primera Instancia esa participación equivale a $66,000.00.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Olga Margarita Molina
González

Recurrida

v.

Héctor Álvarez Gerena

Peticionario

**Núm.** CC-2017-0832

SENTENCIA

San Juan, Puerto Rico, a 3 de octubre de 2019

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se expide el auto de *certiorari* presentado únicamente con relación al primer señalamiento de error y se revoca el dictamen recurrido en lo concerniente al momento a partir del cual el señor Álvarez Gerena estaba obligado a compensar a la señora Molina González por el uso y disfrute exclusivo del bien común.

Conforme a lo aquí resuelto, el señor Álvarez Gerena deberá compensar a la señora Molina González a partir del momento en la que ésta solicitó la división de la comunidad mediante la demanda que interpuso ante el Tribunal de Primera Instancia en el año 2005. A esos efectos, se modifica la compensación a $42,651.00 en concepto de rentas por el uso y disfrute exclusivo de la residencia.

Asimismo, se deja sin efecto la orden de inscripción del inmueble en el Registro de la Propiedad emitida por el Tribunal de Primera Instancia.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres hace constar la siguiente expresión a la que se une la Jueza Asociada señora Pabón Charneco:

El Juez Asociado señor Martínez Torres vota conforme pues, en este caso, como se señala en la Opinión del Tribunal, no surge de los hechos ni de la prueba que se excluyera a la comunera del uso del inmueble antes de que esta reclamara una compensación. Eso lo diferencia de Meléndez Berríos v. Maldonado Dieppa, 175 DPR 1007 (2009) y Díaz v. Aguayo, 162 DPR 801 (2004). Por esa razón, la compensación a la comunera tiene que ser desde que

esta la reclamó, pues ese es el primer momento en el que surge que ella estaba impedida del uso de la propiedad comunal.


                        José Ignacio Campos Pérez
                        Secretario del Tribunal Supremo