ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| SUCN. OSCAR RODRIGUEZ CRESPO COMPUESTA POR SUS MIEMBROS: OFELIA TORRES POVENTUD; OSCAR E. RODRIGUEZ TORRES; ANA MARGARITA RODRIGUEZ TORRES T/C/C COMO ANA RODRÍGUEZ OZDOBA; Y JOSÉ O RODRÍGUEZ TORRES; ESMAPP, LLC<br><br>Parte Apelada<br><br><br>v.<br><br><br>MUNICIPIO DE PATILLAS<br><br>Parte Apelante | KLAN202400990 | *Apelación Civil,* procedente del Tribunal de Primera Instancia, Sala Superior de Patillas<br><br><br>Caso Núm.: PA2020CV00156<br><br><br><br>Sobre: Cobro de dinero Desahucio |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 4 de diciembre de 2024.

Compareció ante este Tribunal la parte apelante, el Municipio de Patillas (en adelante, "Municipio" o Apelante"), mediante recurso d*e* apelación presentado el 4 de noviembre de 2024. Nos solicitó la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Patillas (en adelante, "TPI"), el 6 de septiembre de 2024 y notificada en igual fecha.

Por los fundamentos que expondremos a continuación, se *revoca* la *Sentencia* apelada.

**I.**

El caso ante nuestra consideración tuvo su génesis el 15 de diciembre de 2020, con la presentación de una "**Demanda**" sobre cobro de

dinero y desahucio por parte de la Sucesión del Sr. Oscar Rodríguez Crespo, compuesta por sus miembros: (1) Ofelia Torres Poventud, (2) Oscar Enrique Rodríguez Torres (en adelante, "señor Rodríguez"), (3) Ana Margarita Rodríguez Torres y (4) José Oscar Rodríguez Torres (en adelante y en conjunto, la "Sucesión Rodríguez Crespo" o los "Apelados"), en contra del Municipio.

En la misma, alegó que es la propietaria en pleno dominio de un bien inmueble localizado en la Calle Jesús T. Piñeiro #16, en el Municipio de Patillas, Puerto Rico, el cual consiste de un local de oficinas. Asimismo, expresó que el 17 de enero de 2012 el señor Rodríguez suscribió cierto "**Contrato de Arrendamiento**" con el Municipio sobre la aludida propiedad, mediante el cual acordaron un canon de arrendamiento de $10,000.00 mensuales por un término de diez (10) años. Manifestó que el Municipio le adeudaba la cantidad de $620,000.00, en concepto de cánones de arrendamiento, equivalentes a 62 mensualidades comprendidas desde el mes de octubre de 2015 hasta la fecha de la presentación de "**Demanda**". En armonía con lo anterior, le solicitó al TPI el desahucio de la propiedad del Municipio y que se le condenara a este último al pago de las sumas adeudadas.

El 22 de abril de 2021, el Municipio presentó "**Contestación a Demanda**", "**Reconvención**" y "**Demanda contra Tercero**". En su contestación, alegó afirmativamente que el señor Rodríguez no acreditó su capacidad representativa para suscribir el Contrato y que el mismo adolecía de nulidad, pues no se efectuó con arreglo a la ley. Al mismo tiempo, sostuvo que contrató con una entidad jurídica llamada Sucesión Oscar Rodríguez, Inc. y negó que la misma fuera la dueña registral del inmueble en cuestión.

Por vía de la *Reconvención* reiteró su argumento de que el señor Rodríguez no acreditó su capacidad legal representativa para obligar a la Sucesión Oscar Rodríguez, Inc., quien fue la entidad que realizó las prestaciones, cobró y facturó al Municipio los cánones de arrendamiento. Arguyó que la Oficina del Contralor de Puerto Rico efectuó una auditoría

de la cual presuntamente surgía la falta de capacidad de la Sucesión Oscar Rodríguez, Inc. para contratar y la obligación del recobro de los fondos públicos pagados, en concepto de cánones de arrendamiento. En consecuencia, alegó que tal ausencia de capacidad representativa vició de nulidad el Contrato. De igual forma, en la *Demanda contra Tercero* acumuló a la Sucesión Oscar Rodríguez, Inc. y procuró el cobro de los fondos utilizados para el pago de los cánones, ascendentes a $430,000.00.

Así las cosas, el 25 de mayo de 2021, la Sucesión Rodríguez Crespo presentó "**Réplica a Reconvención**" en la cual sostuvo que el señor Rodríguez no tenía que acreditar su capacidad legal de representación para obligar a la "Sucesión Oscar Rodríguez, Inc." ya que la mencionada corporación no fue parte contratante. Añadió que dicha entidad jurídica se dedica a administrar ciertas propiedades pertenecientes a la Sucesión Rodríguez Crespo, entre las que figura el inmueble en controversia. Alegó afirmativamente que la Sucesión Rodríguez Crespo compareció representada válidamente por el señor Rodríguez, a quien sus hermanos le concedieron la facultad de representarlos.

Tras varios trámites procesales, el TPI emitió una *Sentencia Parcial* mediante la cual declaró "Ha Lugar" la causa de acción de desahucio y ordenó al Municipio abandonar la propiedad en 45 días. Dicho dictamen fue notificado y archivado en autos el 4 de noviembre de 2021. Posteriormente, el 16 de agosto de 2022, la Sucesión Rodríguez Crespo presentó "**Moción de Sentencia Sumaria**" mediante la cual expuso que la actuación del Municipio constituyó un acto de dominio y una privación de una propiedad privada sin justa compensación. Así pues, argumentó que el Municipio le adeudaba el pago de los cánones de arrendamiento pendientes desde octubre de 2015 hasta el 3 de marzo de 2022, por lo que procedía que el TPI dispusiera del caso sumariamente, condenando al ayuntamiento al pago de lo adeudado y declarando "No Ha Lugar" tanto la *Reconvención* como la *Demanda contra Terceros*.

No fue sino hasta el 20 de enero de 2024 que el Municipio presentó "**Oposición a Moción de Sentencia Sumaria y Solicitud de Sentencia**

**Sumaria a Favor del Demandado**". Argumentó que la Sucesión Rodríguez Crespo no había demostrado la capacidad legal del señor Rodríguez para comparecer en representación de ésta al momento de otorgar el Contrato. En particular, expresó lo siguiente:

> [E]n dicha transacción contractual no se hizo referencia al poder o documento que facultaba al Sr. Oscar Rodríguez Torres a realizar dicho otorgamiento a nombre de los demás miembros de la Sucesión. Tampoco se ha mostrado al día de hoy evidencia que rectifique dicha deficiencia. Lo anterior conlleva una falta de capacidad que vicia de nulidad el Contrato otorgado por las partes.[1]

Además, indicó que, el 26 de mayo de 2017, la Sucesión Rodríguez Crespo realizó un "**Acuerdo privado de Partición y Adjudicación de Bienes Inmuebles**" donde permutaron la propiedad en cuestión, entre otros bienes inmuebles, a favor de la entidad ESMAPP, LLC. Señaló, a su vez, que tal entidad no realizó gestión alguna para cobrar los cánones vencidos de arrendamiento, aun cuando posee la titularidad sobre la propiedad arrendada. Razón por la cual, sostuvo que la Sucesión Rodríguez Crespo no tenía legitimación activa para incoar la "**Demanda**".

El 11 de marzo de 2024, la Sucesión Rodríguez Crespo presentó "**R[é]plica a: Oposición a Moción de Sentencia Sumaria y Oposición a: Solicitud de Sentencia Sumaria a favor del Demandado**". De entrada, alegó que el Municipio incumplió con las exigencias de la Regla 36.3(b)(2) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b)(2). Asimismo, sostuvo que omitió incluir a ESMAPP, LLC. como codemandante debido a que la propiedad arrendada no estaba inscrita en el Registro de la Propiedad ni existía una escritura de cesión. Señaló, a su vez, que se configuró una novación modificativa del Contrato de Arrendamiento entre el Municipio y ESMAPP, LLC.

Al día siguiente, el 12 de marzo de 2024, la Sucesión Rodríguez Crespo presentó "**Solicitud de Autorización para Enmendar la Demanda**" junto a "**Demanda Enmendada**". A través de esta, alegó que tiene derecho a reclamar el cobro de los cánones adeudados por el Municipio, comprendidos desde octubre de 2015 hasta mayo de 2017, por haber tenido

---

[1] *Véase*, Apéndice del recurso de apelación, pág. 214.

la titularidad de la propiedad dentro de ese periodo de tiempo. Así pues, argumentó que correspondía incluir a ESMAPP, LLC. como parte para que reclamase el remanente de la deuda, comprendida desde junio de 2017 hasta marzo de 2022, por ser la actual titular de la propiedad arrendada.

Luego, el 16 de abril de 2024, el Municipio presentó "**Escrito en Oposición a Réplica y Oposición del Demandante a Solicitud de Sentencia Sumaria del Municipio de Patillas**". A través del mismo, reiteró sus argumentos anteriores y señaló los hechos que entendía controvertidos, con la finalidad de aclarar cualquier duda sobre el alegado incumplimiento con la Regla 36.3(b)(2) de Procedimiento Civil, *supra.*

Evaluados los escritos presentados por las partes, el TPI emitió *Sentencia* el 6 de septiembre de 2024. Mediante dicha determinación, declaró "Con Lugar" la "**Moción de Sentencia Sumaria**" y la "**Solicitud de Autorización para Enmendar la Demanda**". En síntesis, el foro primario concluyó que el Municipio reconoció haber recibido una Escritura de Protocolización de Poder Núm. 7, en la que presuntamente se le concedió al señor Rodríguez la facultad de representar a la Sucesión Rodríguez Crespo. Coligió, igualmente, que estos últimos cedieron la titularidad de la propiedad arrendada a ESMAPP, LLC., razón por la cual determinó que el Contrato de Arrendamiento era válido y vigente entre el Municipio y ESMAPP, LLC., por haber ocurrido una novación modificativa. Así pues, sostuvo que la Sucesión Rodríguez Crespo tenía legitimación activa para incoar la acción judicial contra el Municipio. Consecuentemente, determinó que la ocupación física del Municipio en la propiedad arrendada activó la figura de la expropiación forzosa a la inversa y el derecho de justa compensación. Por último, ordenó al Municipio a pagar, tanto a la Sucesión Rodríguez Crespo como a ESMAPP, LLC., los cánones de arrendamiento adeudados.

Inconforme con lo anteriormente resuelto, el Municipio acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

1. Cometió error manifiesto el TPI al coceder legitimación a la Sucesión Oscar Rodríguez Torres para presenta [sic] demandada [sic] en desahucio y cobro de dinero, cuando quedó demostrado que al momento de presentar la misma y al momento de emitir sentencia parcial ordenando el desahucio, ni esta ni sus miembros eran dueños del bien inmueble arrendado.

2. Erró el TPI al dar validez a un Contrato de Arrendamiento, que entendemos que por violentar requerimiento de Ley Publica es nulo y porque desde un inicio el Sr. Oscar Rodríguez Torres, no acreditó capacidad representativa de los miembros de la sucesión ni el mismo fue firmado ni confirmado por la codueña Sra. Orfelia Torres Poventud, teniendo falta de consentimiento y falta de causa legal, por tanto, es inexistente.

3. Erró el TPI al considerar la solicitud de enmienda a la Demanda junto con la solicitud de Sentencia Sumaria y proceder a emitir Sentencia en favor de la demandante-apelada, concediendo el permiso para la enmienda e inclusión de la corporación ESMAPP, LLC, y retrotraer dicha enmienda a la fecha en que se presentó la demandada [sic]. Esto sin dar el derecho o espacio para que la parte demandante-apelante contestara dicha demanda enmendada y sin considerar que entre dicha corporación y el Municipio no existe contrato de arrendamiento ni escrito ni verbal. Al así proceder cometió error manifiesto.

4. Erró el TPI al considerar la solicitud de enmienda  a la Demanda junto con la solicitud de Sentencia Sumaria y proceder a emitir Sentencia en favor de la demandante-apelada, concediendo el permiso para la enmienda e inclusión de la corporación ESMAPP, LLC esto sin considerar que cuando se presentó la demanda, durante parte sustancial del proceso de descubrimiento, cuando se solicitó sentencia parcial de desahucio, moción de sentencia sumaria, quienes fueron los componentes de la Sucesión y doña Orfelia Torres Poventud, y su abogado con conocimiento de causa, mantuvieron en secreto a la parte demandada e inclusive al Tribunal, que para el 26 de mayo de 2017 se había cedido el inmueble a la corporación.

5. Erró el TPI al dar validez al Contrato de Arrendamiento y a las reclamaciones de la demandante-apelada, no empece que el oficial-presidente de la Sucesión y persona que firmó el mismo, Oscar Rodríguez Torres, se declaró culpable de varios delitos que configuran violación a los delitos enumerados en el Artículo 3 de la Ley especial Núm. 458 del 29 de diciembre de 2000, según enmendada.

6. Erró el TPI al dar validez al Contrato de Arrendamiento y a las reclamaciones de la parte de demandante-apelada, no empecé que el oficial-presidente de la Sucesión y persona que firmó el mismo, Oscar Rodríguez Torres, incumplió y violó la cláusula Vigésima Segunda del mismo al declararse culpable de varios delitos que configuran violación a los delitos enumerados en el Artículo 3 de la Ley especial Núm. 458 del 29 de diciembre de 2000, según enmendada.

7. Erró el TPI al ordenar el pago de cánones de arrendamiento al Municipio por razón de un contrato que advino ser nulo, cuando el oficial-presidente de la Sucesión y persona que firmó el mismo, Oscar Rodriguez Torres, incumplió y violó la cláusula Vigésima Segunda del mismo al declararse culpable de varios delitos que configuran violación a los delitos enumerados en el Artículo 3 de la Ley especial Núm. 458 del 29 de diciembre de 2000, según enmendada.

8. Erró el TPI al declarar que procede compensación por concepto de expropiación al inversa [sic] del inmueble arrendado, no empece no existir demanda o alegación en la misma pidiendo tal expropiació [sic] y al favorablemente aplicar los requisitos del caso Ortiz Zayas v. ELA, 2023TSPT43 [sic], no empece que existe diferencia de hechos y que no debe ser de aplicación en casos que el Contrato de Arrendamiento advino ser nulo por violación y disposición de la Ley Pública.

Así las cosas, el 27 de noviembre de 2024, la parte apelada presentó ante este Tribunal su "**Oposición a Apelación**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial

y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal. SLG Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal tenga ante su consideración todos los hechos necesarios y pertinentes para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 678. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 678.

Por su parte, la parte promovida por una moción de sentencia sumaria debe demostrar que existe controversia en cuanto a algún hecho material que sea constitutivo de la causa de acción del demandante. Rosado Reyes v. Global Healthcare, 205 DPR 796, 808 (2020); Oriental Bank v. Perapi *et al.*, 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba

presentada y no cruzarse de brazos. ELA v. Cole, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. Oriental Bank v. Caballero García, *supra*, pág. 680; Roldán Flores v. M. Cuebas *et al*., 199 DPR 664, 677 (2018). Adicionalmente, en León Torres v. Rivera Lebrón, 204 DPR 20, 47 (2020), el Tribunal Supremo resolvió que ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición. Así que, según lo expresa el propio tribunal, "la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión". Íd., pág. 54.

Según las directrices pautadas por nuestro más Alto Foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. Abrams Rivera v. ELA, DTOP y otros, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. JADM v. Centro Comercial Plaza Carolina, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser de *novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Dr. Bravo, 161 DPR 308, 335 (2004). De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Íd., págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

Conviene desde ahora destacar que el Tribunal Supremo también ha expresado que es desaconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia. Ramos Pérez v. Univisión de PR, 178 DPR 200, 2019 (2010); Carpets & Rugs v. Tropical Reps, 175 DPR 615, 638 (2009). No obstante, "cuando de los documentos a ser

considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales" nada impide que se utilice la sentencia sumaria en casos donde existen elementos subjetivos o de intención. Ramos Pérez v. Univisión de PR, *supra*, pág. 219.

**B.**[2]

Es pilar fundamental de nuestro acervo contractual puertorriqueño lo es el principio de la libertad de contratación. Arthur Young & Co. v. Vega III, 136 DPR 157, 169 (1994). A base de éste, las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que éstas no sean contrarias a la ley, a la moral o al orden público. 31 LPRA sec. 3372. Así, se posibilita que las partes puedan contratar cuando quieran, como quieran y con quien quieran. J. Puig Brutau, Fundamentos de Derecho Civil: Doctrina General del Contrato, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 5.

Es norma sólidamente establecida en nuestra jurisdicción que el contrato tiene fuerza de ley entre las partes, por lo que desde el momento de su perfeccionamiento cada contratante se obliga, "no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". 31 LPRA sec. 3375. Es por ello que existe un contrato desde que una o varias personas consienten en obligarse a dar alguna cosa o a prestar algún servicio. 31 LPRA sec. 3371.

En ese sentido, un contrato es vinculante desde que concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato y (c) causa de la obligación que se establezca. 31 LPRA sec. 3391; Díaz Ayala et al. v. ELA, 153 DPR 675, 690-691 (2001). Consecuentemente, "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en

---

[2] Somos conscientes de que mediante la Ley Núm. 55-2020, según enmendada, se adoptó el "Código Civil de Puerto Rico de 2020" (en adelante, "Código Civil de 2020") y se derogó el Código Civil de Puerto Rico de 1930. Sin embargo, el Artículo 1812 del Código Civil de 2020 dispone que: "Los actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código". 31 LPRA sec. 11717. Por tanto, para propósitos de la adjudicación de la controversia que nos ocupa, utilizaremos las disposiciones del Código Civil derogado y su jurisprudencia interpretativa.

ellos concurran las condiciones esenciales para su validez". 31 LPRA sec. 3451.

## C.[3]

Nuestro ordenamiento jurídico define el concepto sucesión como la "transmisión de los derechos y obligaciones del difunto a sus herederos". 31 LPRA sec. 2081. El derecho del heredero a la herencia nace al ocurrir el fallecimiento del causante. 31 LPRA sec. 2085. De ahí la doctrina que establece que desde el momento del fallecimiento del causante cobran vigencia las normas estatutarias o las disposiciones testamentarias que regirán el destino del caudal relicto. E. González Tejera, Derecho Sucesorio Puertorriqueño, San Juan, 1983, Vol. I, pág. 33. Como medida cautelar para lidiar con esa situación, la mayoría de los comentaristas en la materia postulan que "la transmisión sucesoria se da en el conjunto patrimonial: los sucesores asumen el rol de nuevos titulares, como una universalidad jurídica". Íd., pág. 33-34.

Ahora bien, se constituye una comunidad hereditaria cuando existen dos o más llamamientos a la universalidad de la herencia. Vega Montoya v. Registrador, 179 DPR 80, 87 (2010). Es decir, cuando dos personas o más son llamadas a heredar a título universal. Nuestro más alto foro estableció que dada la ausencia de normas reglamentarias detalladas, la comunidad hereditaria se regirá por las siguientes fuentes legales en el siguiente orden de prelación: (i) las disposiciones imperativas del Código Civil; (ii) la voluntad del causante; (iii) las disposiciones que le sean aplicables sobre división de la herencia; y (iv) las disposiciones generales sobre comunidad de bienes que sean compatibles con el carácter universal de este tipo de comunidad. Vega Montoya v. Registrador, supra, págs. 87–88; Kogan v. Registrador, supra, pág. 651; Cintrón Vélez v. Cintrón De Jesús, 120 DPR 39, 49 (1987).

---

[3] Reiteramos que estamos conscientes que el Código Civil de 2020 derogó al Código Civil de Puerto Rico de 1930. Sin embargo, el Artículo 1816 del Código Civil de 2020 dispone que: "Los derechos a la herencia de quien ha fallecido, con testamento o sin él, antes de entrar en vigor este Código, se rigen por la legislación anterior". 31 LPRA sec. 11721. Por tanto, para propósitos de la adjudicación de la controversia que nos ocupa, utilizaremos tanto las disposiciones del Código Civil derogado como su jurisprudencia interpretativa.

Particularmente, la jurisprudencia estableció que una sucesión no tiene personalidad jurídica y, por ende "[n]o es una entidad legal independiente de los herederos". Pino Development Corp. v. Registrador, 133 DPR 373, 388 (1993). Además, téngase presente que esta comunidad posee características generales. Kogan v. Registrador, *supra*, pág. 651 (1990). En específico, la comunidad hereditaria es: (i) forzosa, ya que surge con independencia absoluta de la voluntad de los herederos; (ii) incidental, ya que no surge de un acuerdo entre herederos, sino por la muerte del causante; (iii) transitoria, ya que puede disolverse por medio de la partición; y (iv) universal, ya que recae sobre la totalidad del patrimonio que constituye el caudal hereditario. Vega Montoya v. Registrador, *supra,* págs. 88–89.

Con relación a esto último, la copropiedad hereditaria se distingue por mantener el caudal relicto como un todo, excluyendo la posibilidad de ostentar un derecho sobre un bien en particular. Soc. de Gananciales v. Registrador, 151 DPR 315, 319 (2000). En otras palabras, lo que cada coheredero obtiene es un derecho sobre la totalidad de la herencia y no sobre bienes concretos del caudal. Íd. Utilizando esa norma como fundamento, el Tribunal Supremo reiteró que "[l]os interesados tienen sobre el patrimonio del causante la titularidad de una cuota en abstracto, pero no sobre bienes en particular". Kogan v. Registrador, *supra*, pág. 652. De manera que las facultades atribuidas y las gestiones realizadas por los copropietarios están subordinadas al derecho sobre la cosa común de todos los demás. Residentes Sagrado Corazón v. Arsuaga, 160 DPR 289, 308 (2003). Así que, al analizar la autoridad de cualquier copropietario sobre la cosa común, el Tribunal Supremo expresó que:

> [L]as normas referentes a la autoridad que los copropietarios poseen sobre el objeto común varían de acuerdo con el acto o gestión que se interese realizar sobre éste. Del mismo modo, la facultad de los comuneros para obligar con sus actos a los demás partícipes de la comunidad difiere dependiendo de si se trata de un acto de conservación, de administración o de alteración de la cosa común. Íd., pág. 308.

En lo pertinente a los actos de administración, el alto foro sostuvo que son aquellos "actos dirigidos al mero aprovechamiento de la cosa […] y que solo tienen como objeto regular el uso y el modo de obtener todas aquellas utilidades que la cosa permita, sin detrimento de su natural entidad". Íd., pág. 310. Manifestó, además, que tales actos "sólo obligará a todos los condueños si es ejecutado luego de haberse llegado a un acuerdo por mayoría". Íd., pág. 308.

En cuanto a los actos de alteración de la cosa común, el Tribunal Supremo dispuso que no podrán ser realizados por ninguno de los codueños sin el consentimiento unánime de los demás. Íd., pág. 309. Expresó, a su vez, que estos actos "suponen la producción de un cambio en el uso y disfrute o en la sustancia e integridad de la cosa, que pueden modificar el destino y la naturaleza de ésta y que significa una extralimitación de las facultades que legalmente corresponden a cada propietario". Íd., págs. 310-311.

**III.**

Como cuestión umbral, es menester establecer que la controversia se originó con la presentación de la "**Demanda**" sobre desahucio y cobro de dinero, en virtud del Contrato de Arrendamiento otorgado entre el señor Rodríguez, en representación de los Apelados, y el Municipio. Este último, recurre ante este Tribunal tras la *Sentencia* dictada por TPI, mediante la cual dispuso sumariamente del caso y condenó al ayuntamiento al pago de los cánones alegadamente adeudados a la Sucesión Rodríguez Crespo y planteó ocho (8) señalamientos de error en su recurso.

Habiéndose dispuesto por vía sumaria de todas las controversias planteadas en el caso, es de umbral que evaluemos el planteamiento de nulidad del contrato esgrimido por el Municipio, pues todos y cada uno de los asuntos que tuvo ante sí el foro *a quo* dependen de la existencia legal de dicho acuerdo contractual. En síntesis, el Apelante alegó que el Contrato de Arrendamiento es nulo debido a que el señor Rodríguez no acreditó su capacidad representativa para obligar a todos los miembros de la Sucesión Rodríguez Crespo. Le asiste la razón. Veamos.

Según fuera anteriormente reseñado, el mecanismo procesal sumario busca propiciar la solución justa, rápida y económica para aquellos pleitos en los que no existe una controversia genuina en torno a los hechos materiales que constituyen la causa de acción que se contempla, **restando únicamente aplicar el derecho a los hechos no controvertidos, sin la necesidad de un juicio en su fondo**. Oriental Bank v. Caballero García, *supra,* pág. 678. No obstante, como se ha reiterado, la adjudicación sumaria solamente procederá cuando no existe controversia sobre hechos materiales y esenciales y, **como cuestión de derecho, la parte promovente es merecedor del remedio solicitado**. Meléndez González *et al.* v. M. Cuebas, *supra*. Además, conforme se ha resuelto, en el proceso de adjudicar una solicitud de sentencia sumaria, el tribunal deberá utilizar no solo los documentos presentados con la moción, sino aquellos que surjan del expediente del caso.

En este caso, el TPI emitió una *Sentencia* en la cual desglosó veintidós (22) determinaciones de hechos materiales incontrovertidos. En lo aquí pertinente, el TPI expuso que "[e]l Contrato fue suscrito por ORT [Sr. Oscar E. Rodríguez Torres] como miembro de la sucesión de Oscar Rodríguez Crespo y como representante de los otros miembros de la sucesión".[4] Además, en la parte dispositiva de la *Sentencia*, el foro primario concluyó, entre otras cosas, que el Contrato de Arrendamiento era válido debido a que:

> [E]l Propio Municipio reconoció en su Oposición a Sentencia Sumaria que los demandantes le entregaron copia de la Escritura de Protocolización de Poder número 7, mediante la cual los codemandantes José Oscar Rodríguez Torres y a Ana Margarita Rodríguez Torres le concedieron a ORT esa capacidad representativa que ahora el Municipio intenta no reconocer.[5]

Conforme hemos adelantado, es norma trillada en nuestra jurisdicción que la validez de todo contrato depende de la concurrencia de tres (3) requisitos fundamentales, a saber: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato y (c) causa de

---

[4] *Véase*, Apéndice del recurso de apelación, pág. 7.
[5] *Véase*, Apéndice del recurso de apelación, pág. 20.

la obligación que se establezca. **La existencia o no de estos elementos se determina al momento de perfeccionar el contrato**. Por ello, es nulo todo negocio jurídico en el que el objeto, la causa o el consentimiento son inexistentes. Es, pues, evidente que al momento en que se analiza la validez o no de cualquier pacto contractual, es indispensable asegurarnos de la concurrencia de todos estos requisitos.

Recordemos, en particular, que el asunto medular que se plantea en el señalamiento de error que atendemos se centra en la existencia o no del consentimiento de la Sucesión Rodríguez Crespo para suscribir el Contrato de Arrendamiento en controversia, a través de la presunta autorización otorgada al señor Rodríguez y comparecer a nombre de todos los integrantes de dicha Sucesión.  De ahí que se haga indispensable reiterar que, una vez fallecido el causante, los herederos de éste entran en una comunidad hereditaria. Es decir, advienen a un estado de cotitularidad sobre todos los bienes del caudal que conforman la masa hereditaria.

Al llevar a cabo el ejercicio de *novo* que venimos compelidos a efectuar al evaluar la procedencia de una moción de sentencia sumaria, nos percatamos que la Sucesión Rodríguez Crespo no aportó documento alguno que constatara la capacidad representativa del señor Rodríguez al momento en que se suscribió el Contrato en controversia, ni de los autos electrónicos del TPI tampoco surge dicha autorización. Nótese que el único documento presentado en la moción de sentencia sumaria presentada por los Apelados lo fue el propio Contrato de Arrendamiento, sin más. Entiéndase, no se aportó ningún documento que acreditara la supuesta capacidad jurídica que ostentaba el señor Rodríguez para representar a todos los miembros de la Sucesión. Tampoco hemos encontrado en el expediente documentación alguna que constate dicha realidad legal o que el Municipio en su oposición a la solicitud de sentencia sumaria hubiera admitido dicha capacidad, como lo expresó el foro apelado en su *Sentencia*. Todo lo contrario, el récord es claro al revelar que, en todo momento, el ayuntamiento ha cuestionado la capacidad representativa del

señor Rodríguez para otorgar el Contrato de Arrendamiento, lo cual vicia el consentimiento prestado por los Apelados.

Ahora bien, aun si ignoráramos dicha realidad, la parte apelada argumenta en su escrito ante nos que el hecho de la declaración a los efectos de que "mediante este documento se alega que el Sr. Oscar estaba autorizado para representar a José Oscar Rodríguez y a Ana Margarita Rodríguez Torres" era suficiente para que se estableciera la capacidad representativa del señor Rodríguez. Nada más lejos de la verdad. Acoger dicha postura equivale a alejarnos de los postulados procesales que rigen el análisis de una moción de sentencia sumaria y que requieren la aportación de prueba documental para que no exista controversia sobre hechos medulares que permitan la disposición del caso, sin necesidad de celebrar un juicio.

Así pues, somos de la opinión que no se ha evidenciado que el señor Rodríguez firmó el aludido Contrato con un poder o autorización válida por parte de quienes ostentan el derecho de efectuar actos de administración y/o actos de alteración de la cosa común sobre dicho bien inmueble, a saber: el restante de los integrantes de la Sucesión Rodríguez Crespo. Esto, puesto que no surge del expediente copia de la alegada Escritura de Protocolización de Poder Núm. 7, ni tan siquiera el reconocimiento de su existencia por parte del Municipio. Reiteramos, el ayuntamiento en todo momento ha cuestionado la capacidad legal del señor Rodríguez para otorgar el referido contrato.

Dicha realidad fáctica plantea la existencia de una controversia de hecho y de derecho que pudiera afectar el desenlace de todas las controversias ante la consideración del foro *a quo*. Lo anterior, puesto que la controversia restante sobre la procedencia del cobro de los cánones de arrendamiento alegado por la Sucesión Rodríguez Crespo está supeditada y depende estrictamente de la existencia y/o validez jurídica del Contrato en cuestión. Es decir, pudiéramos estar ante una actuación unilateral del señor Rodríguez al suscribir por su cuenta el Contrato de Arrendamiento, sin contar con capacidad representativa válida para concretar dicha

transacción, en cumplimiento con nuestro estado de derecho vigente. Adviértase que lo anterior, pudiera implicar que el Contrato nunca produjo efecto jurídico alguno, puesto que el señor Rodríguez no era el único dueño del inmueble, sino un comunero con una cuota abstracta sobre la cosa común al momento en que se efectuaron las contraprestaciones. Es decir, todos los miembros de la Sucesión Rodríguez Crespo eran los dueños en común pro indiviso sobre el bien en controversia y, como tal, para poder dar en arrendamiento el inmueble, se hacía indispensable que mediara el consentimiento de éstos al momento de otorgar el Contrato.

Por tanto, evaluados los planteamientos esgrimidos por ambas partes y tras un análisis acucioso de la totalidad del expediente ante nos, determinamos que es meridianamente claro que existe una controversia de hechos medular y material que impedía que el caso fuera adjudicado sumariamente. Reiteramos que aquí la controversia fáctica estriba en que no existe prueba en los autos que evidencie que el señor Rodríguez ostentaba legalmente la capacidad representativa para obligar a la Sucesión Rodríguez Crespo al otorgar el Contrato. Por tanto, concluimos que dicha controversia debe dilucidarse en una vista evidenciaria o juicio plenario, en el cual los Apelados deberán aportar la prueba correspondiente para establecer la capacidad legal de representación del señor Rodríguez y así, el foro primario pueda estar en posición de atender el restante de las controversias pendientes de adjudicación. **Reiteramos, todas y cada una de las controversias planteadas dependen específicamente de la validez o no del Contrato**. No habiéndose aportado ni un ápice de prueba que constatara el consentimiento de los integrantes de la Sucesión Rodríguez Crespo se impedía la disposición sumaria del caso.

Dispuesto esto, no podemos avalar la conclusión del foro primario y determinamos que se cometió el segundo señalamiento de error. Habiendo concluido lo anterior, se hace innecesaria la discusión de los restantes planteamientos de error señalados en el recurso, pues todos están cimentados en una obligación contractual que, a estas alturas del litigio, desconocemos si tiene o no efecto legal alguno que podría dar paso a la

adjudicación de todas las controversias presentadas por los Apelados. Por ello, reiteramos, corresponde que el foro de instancia evalúe la capacidad representativa en controversia en una vista evidenciaria o en un juicio plenario para poder estar en posición de adjudicar el restante de las controversias ante su consideración.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *revoca* la *Sentencia* apelada. Así pues, devolvemos el caso al foro primario para la continuación de los procedimientos consistente con lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones