Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| IRIS JANET VÉLEZ FIGUEROA Y OTROS<br><br>Recurridos<br><br>v.<br><br>DARWING VÉLEZ REYES Y OTROS<br><br>Peticionarios | TA2025CE00308 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm. CG2019CV00278<br><br>Sobre: Liquidación de Comunidad de Bienes Hereditarios |
| --- | --- | --- |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Cruz Hiraldo y el Juez Sánchez Báez

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de octubre de 2025.

La parte peticionaria, María I. Reyes Falcón, Darwing Vélez Reyes y Kerwing Vélez Reyes, comparecen ante nos para que dejemos sin efecto la determinación emitida y notificada el 14 de agosto de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas. Mediante la misma, el Foro primario declaró *No Ha Lugar* la *Urgente Moción Informativa, Solicitud de Orden para la Paralización de Subasta, Solicitud de Consignación de Dineros y Solicitud de Otros Remedios*, presentada por la parte peticionaria, ello dentro de un pleito sobre liquidación de comunidad de bienes hereditarios incoado por la parte recurrida, Iris J. Vélez Figueroa y David J. Vélez Figueroa.

**I**

El 30 de enero de 2019, la parte recurrida presentó la *Demanda* de epígrafe, a los fines de dividir y liquidar el caudal hereditario del causante, señor Ignacio Vélez Rodríguez. Según sostuvo, el caudal hereditario estaba compuesto de: dinero en varias cuentas bancarias; una residencia ubicada en la Calle 7 G-5,

TA2025CE00308                                                2

Urbanización El Vivero, Gurabo, Puerto Rico; un solar en la Calle A #40, Urbanización Campamento, Gurabo, Puerto Rico; cuatro (4) vehículos de motor; y varios camiones de carga comercial. En el pliego, la parte recurrida arguyó que la parte peticionaria mantenía la posesión y control exclusivo de todos los bienes que componían el caudal hereditario. En particular, alegó que la parte peticionaria utilizaba, para beneficio propio, los camiones de carga para operar el servicio de acarreo con el Servicio Postal de los Estados Unidos (USPS). Consecuentemente, solicitó que se le imputara a la parte peticionaria una renta por el uso de los bienes inmuebles y muebles pertenecientes a la sucesión, y la liquidación de su participación en el caudal hereditario.

Por su parte, el 27 de febrero de 2019, la señora Reyes Falcón presentó su *Contestación a la Demanda*; y, posteriormente, el 12 de marzo de 2019, Darwin y Kerwing, ambos de apellidos Vélez Reyes, presentaron su *Contestación a la Demanda*. En sus respectivos escritos, negaron las alegaciones formuladas en su contra y plantearon que poseían créditos en contra de la sucesión, así como que la parte recurrida debía colacionar ciertos bienes donados por el causante. Además, la señora Reyes Falcón expuso que había realizado gestiones para llevar a cabo la partición de la herencia de forma extrajudicial, pero que, debido al proceder agresivo de la parte recurrida, no fue posible alcanzar un acuerdo.

Luego de celebrado el juicio en su fondo, el 5 de marzo de 2025, notificada el día 12 de ese mismo mes y año, el Tribunal de Primera Instancia emitió *Sentencia*. Mediante la misma, el Foro primario estableció que, luego de descontar las deudas, créditos en contra de la sucesión y la cuota viudal, el caudal hereditario tenía un valor que ascendía a $62,995.87. La partición judicial de los bienes se estableció de la siguiente manera:

A.  Iris Janet Vélez Figueroa le correspondían $15,748.97.

B.  David Junior Vélez Pérez le correspondían $4,998.97.

C.  Darwing Vélez Reyes le correspondían $2,822.16.

D.  Kerwing Vélez Reyes le correspondían $15,748.96.

E.  María Isabel Reyes Falcón, viuda del causante, le correspondían $12,028.40. Además, dispuso que le correspondían $80,549.45 por concepto de la liquidación de la sociedad legal de bienes gananciales.

En vista de lo anterior, el Tribunal de Primera Instancia ordenó la venta en pública subasta de todos los bienes pertenecientes a la sucesión. El producto de la venta debía ser consignado en el Tribunal, a fin de que se aplicara, en primer lugar, al pago de las deudas del caudal hereditario y el remanente para la distribución entre las partes conforme a lo dispuesto en la *Sentencia.*

El 9 de abril de 2025, la parte peticionaria presentó una *Moción en Cumplimiento de Orden* en la que expresó su intención de ejercer el derecho de tanteo.  A esos fines, anunció su disposición de adquirir todos los bienes y de asumir las deudas pertenecientes a la Sucesión del causante, Vélez Rodríguez, comprometiéndose a entregar a la parte recurrida las participaciones que le correspondían conforme a la adjudicación previamente ordenada por el Tribunal de Primera Instancia.

En desacuerdo, el 15 de abril de 2025, la parte recurrida presentó una *Moción Solicitando Orden para Vender mediante Pública Subasta los Bienes Hereditarios.*  En el referido pliego, esbozó que no estaba de acuerdo con vender su derecho hereditario a la parte peticionaria "sin que se le extienda otras ofertas que pudieran resultar ser mejor vía subasta pública".[1] En consecuencia, solicitó que se ordenara la liquidación total de la comunidad hereditaria a través de un proceso de subasta pública, y que el fruto de las ventas

---
[1] Apéndice del recurso, Entrada Núm. 175.

fuera consignado en el Tribunal. Expresó que, de estar interesados en adquirir los bienes hereditarios, la parte peticionaria debía participar del proceso de subasta en igualdad de condiciones con terceros licitadores. En específico, la parte recurrida solicitó la venta en pública subasta de los siguientes bienes:

i. Camión International, Serie 4300 (2006), valorado en $22,000.00.

ii. Camión International, Serie 4400 (2006) valorado en $24,000.00.

iii. Camión International, Serie 4300 (2005) valorado en $22,000.00.

iv. Camión International, Serie 7500 (2005) valorado en $24,000.00.

v. Vehículo Isuzu Trooper (2002) valorado en $600.00.

vi. Vehículo Ford Explorer (2007) valorado en $4,000.00.

vii. Vehículo Toyota Yaris (2010) valorado en $4,500.00.

viii. Residencia en la Urbanización El Vivero en Gurabo, Puerto Rico, valorada en $142,000.00.

ix. Solar #40 Calle A, Urbanización Campamento en Gurabo, valorado en $38,000.00.

x. Panteón valorado en $7,800.00.

El Tribunal de Primera Instancia, mediante *Orden* emitida y notificada el 21 de abril de 2025, declaró *No Ha Lugar* la *Moción Solicitando Orden para Vender mediante Pública Subasta los Bienes Hereditarios* presentada por la parte recurrida.

Así las cosas, el 14 de mayo de 2025, la parte recurrida presentó una *Solicitud de Orden y Mandamiento para Ejecutar Sentencia.* Mediante el referido pliego, solicitó al Tribunal de Primera Instancia que autorizara la ejecución de la *Sentencia* emitida el 5 de mayo de 2025. En específico, peticionó que se ordenara al Alguacil proceder con la ejecución mediante la venta en pública subasta del inmueble sito en la Urbanización El Vivero, Calle 7 G-5, Gurabo, Puerto Rico.

La parte recurrida detalló que el referido inmueble tenía un valor estimado de $142,000.00, del cual el causante ostentaba un

setenta y cinco porciento (75%) de participación, y la señora Reyes Falcón un veinticinco porciento (25%). Además, sostuvo que el inmueble en cuestión gravaba un crédito a favor de la extinta sociedad legal de bienes gananciales ascendente a $13,500.00, por lo que, a su entender, el valor neto atribuible a la sucesión ascendía a $93,000.00. Ante ello, solicitó que el producto de la venta se consignara en el Tribunal, para su eventual distribución conforme a lo resuelto, incluyendo el pago de las deudas y la adjudicación del remanente a las partes en proporción a sus respectivas participaciones.

El 28 de mayo de 2025, notificada el 2 de junio siguiente, el Tribunal de Primera Instancia emitió una *Orden de Ejecución de Sentencia* en la que declaró *Ha Lugar* la *Solicitud de Orden y Mandamiento para Ejecutar Sentencia* incoado por la parte recurrida. En consecuencia, autorizó la venta en pública subasta del inmueble en controversia, la cual se programó para celebrarse el 20 de agosto de 2025. Según se dispuso, el producto de la venta se consignaría en el Tribunal para ser destinado al pago de deudas y a la distribución correspondiente entre las partes.

Inconforme, el 9 de junio de 2025, la parte peticionaria presentó una *Moción de Reconsideración.* Sostuvo que el inmueble objeto de la subasta correspondía al hogar principal de la viuda, la señora Reyes Falcón, quien ostentaba una participación ganancial de un cincuenta porciento (50 %). Además, explicó que la señora Reyes Falcón, era una persona de la tercera edad y que la vivienda en cuestión era el único lugar donde podía residir. Planteó que ordenar la venta judicial de la única vivienda de la viuda, valorada en $142,000.00 para obtener la cantidad de $20,747.94, suma de las participaciones de la parte recurrida, no era una decisión justa y razonable. Propuso, como alternativa, la venta del solar en la Calle

A #40, Urbanización Campamento en Gurabo, Puerto Rico, valorado en $38,000.00.

Además, la parte peticionaria planteó que el Tribunal de Primera Instancia había resuelto una solicitud sustancialmente similar, mediante *Orden* emitida el 21 de abril de 2025, la cual había advenido final y firme, al no haber sido objeto de reconsideración ni revisión judicial. En ese contexto, la parte peticionaria sostuvo que la solicitud que dio paso a la nueva orden de venta constituía un asunto ya adjudicado y que, por consiguiente, el foro primario carecía de jurisdicción para emitir una determinación ulterior sobre ese mismo extremo, una vez expirado el término jurisdiccional aplicable.

Evaluada la solicitud de la parte peticionaria, el Tribunal de Primera Instancia, mediante *Orden* emitida y notificada el 13 de junio de 2025, declaró *No Ha Lugar* la *Moción de Reconsideración.*

El 13 de agosto de 2025, la parte peticionaria incoó una *Urgente Moción Informativa, Solicitud de Orden para la Paralización de Subasta, Solicitud de Consignación de Dineros* y *Solicitud de Otros Remedios.*[2] Informó que, el 31 de julio de 2025, mediante correo electrónico, comunicó a la parte recurrida que entregarían a estos sus respectivas participaciones para así adquirir todos los bienes y asumir las deudas correspondientes a la Sucesión del causante. Esbozó que la negativa de la parte recurrida a recibir los cheques y su insistencia en celebrar la subasta señalada, evidenciaba un proceder malicioso, en tanto pretendían condicionar la cesión de los bienes del caudal al pago de una suma adicional de noventa mil

---

[2] Junto a la *Urgente Moción Informativa, Solicitud de Orden para la Paralización de Subasta, Solicitud de Consignación de Dineros y Solicitud de Otros Remedios*, la parte peticionaria anejó: 1) copia del cheque núm. 103104400019918 a nombre de Iris Janet Vélez Figueroa, por la cantidad de quince mil setecientos cuarenta y ocho dólares con noventa y siete centavos ($15,748.97); 2) copia del cheque núm. 103104400019919 a nombre de David Junior Vélez Pérez, por la cantidad de cuatro mil novecientos noventa y ocho dólares con noventa y siete centavos ($4,998.97); 3) captura de pantalla de comunicación por correo electrónico de la representación legal de la parte recurrida.

dólares ($90,000.00) que no guardaba relación con lo adjudicado en la *Sentencia,* ni había sido reconocida judicialmente. En consecuencia, solicitó al Tribunal: (1) la consignación de los cheques a favor de la parte recurrida; (2) la paralización inmediata de la subasta pautada para el 20 de agosto de 2025; y (3) orden para comparecer y otorgar la escritura de cesión de derechos hereditarios, junto con los documentos necesarios para formalizar la transferencia de los bienes y deudas del caudal hereditario.

Tras haber entendido sobre la referida postura, mediante *Orden* del 13 de agosto de 2025, el Tribunal de Primera Instancia concedió 24 horas a la parte recurrida para que expresara su posición en cuanto a lo solicitado por la parte peticionaria en su *Urgente Moción Informativa, Solicitud de Orden para la Paralización de Subasta, Solicitud de Consignación de Dineros* y *Solicitud de Otros Remedios.*

Como resultado, el 14 de agosto de 2025, la parte recurrida emitió su expresión y se reafirmó en que el interés en proseguir con la subasta no era un acto de mala fe, sino, era un ejercicio legítimo de un derecho procesal conferido por *Sentencia* y respaldado por el principio de mejor realización de activos hereditarios conforme el Código Civil de Puerto Rico y el caso *Delgado Echevarría v. López Rodríguez,* resuelto por un panel hermano de esta curia con nomenclatura KLAN202400288. En dicho contexto expresó que, dado a que las partes no pudieron llegar a un acuerdo sobre la partición de la comunidad de bienes de la sucesión del causante Vélez Rodríguez, procedía que el Tribunal ordenara la venta de la cosa en pública subasta y se repartiera el precio entre ellos.

Evaluados los escritos de las partes, el 14 de agosto de 2025, con notificación del mismo día, el Tribunal de Primera Instancia emitió una *Orden* en la que declaró *No Ha Lugar* a la paralización de la subasta.

Inconforme con lo resuelto, el 18 de agosto de 2025, la parte peticionaria acudió ante nos mediante el presente auto de *certiorari.* Conjuntamente, solicitó la paralización de los procedimientos en auxilio de nuestra jurisdicción, petición a la que, mediante *Resolución* del 18 de agosto de 2025, accedimos. En su recurso sostiene que:

> Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Caguas, al determinar NO paralizar la subasta pautada para el 20 de agosto del 2025 donde se subastará la residencia de la viuda del causante, sin tomar en consideración: (1) que los peticionarios poseen un derecho de tanteo sobre la propiedad a subastarse, (2) que evidenciaron poseer el pago de las participaciones de los apelados, (3) que asumirán todas las deudas del caudal hereditario, tal como lo han hecho desde la muerte del causante en junio del 2017, (4) que la viuda posee un derecho de adquisición preferente sobre dicho inmueble y (5) que constituyen la mayoría de los herederos, cumpliendo así con las disposiciones de los Artículos 857, 1605 y 1625 del Código Civil para lograr que se les adjudique la propiedad inmueble a subastarse.

Luego de examinar el expediente apelativo que nos ocupa y con el beneficio de la comparecencia de ambas partes de epígrafe, estamos en posición de expresarnos sobre el asunto en controversia.

**II**

**A**

Conforme a lo dispuesto en el Artículo 1816 del Código Civil de Puerto Rico de 2020, los derechos a la herencia de quien ha fallecido, con testamento o sin él, antes de entrar en vigor el referido Código, se rigen por la legislación anterior. 31 LPRA sec. 11721.[3]

Se constituye una comunidad hereditaria con la concurrencia de dos o más llamamientos a la universalidad de la herencia. *Vega Montoya v. Registrador,* 179 DPR 80, 87 (2010); *Soc. de Gananciales v. Registrador,* 151 DPR 315, 317 (2000); *Cintrón Vélez v. Cintrón De Jesús,* 120 DPR 39, 48 (1987). La comunidad hereditaria

---

[3] Dado a que los hechos de la presente causa acontecieron previo a la aprobación del Código Civil de 2020, el caso se debe disponer al amparo de lo estatuido en el Código Civil de 1930, cuerpo legal vigente al momento de los hechos en controversia.

comprende todas las relaciones jurídicas patrimoniales del difunto excepto aquellas que, por su naturaleza o contenido, se extinguen con la muerte del causante. *Íd.*

La comunidad hereditaria se caracteriza por ser universal. Es decir, incide en la totalidad del patrimonio que constituye el caudal hereditario y no sobre cada bien, derecho u obligación que la compone. Por ello, se ha establecido que vigente la comunidad hereditaria, los herederos tienen titularidad, no de bienes particulares de la masa hereditaria, sino de una cuota en abstracto de la totalidad de los bienes que formen parte del caudal relicto. *Vega Montoya v. Registrador*, supra, págs. 88-89. Por tal razón, los coherederos sujetos a la comunidad no pueden reclamar derechos sobre bienes específicos del caudal hereditario hasta que se haya llevado a cabo la partición de herencia. *Íd.*, pág. 89.

Una de las características de la comunidad hereditaria es que es transitoria. Ningún coheredero está obligado a permanecer en ella indefinidamente ni a estar sometido en la indivisión por un plazo largo. *Vega Montoya v. Registrador*, supra, pág. 88; Artículos 1005, 1006 y 1865 del Código Civil de Puerto Rico de 1930, 31 LPRA secs. 2871, 2872 y 5295. La comunidad hereditaria dejará de existir tan pronto se liquide el patrimonio del causante y se adjudiquen a los herederos los bienes que les corresponden de la herencia, confiriéndoles así la propiedad exclusiva sobre éstos. *Cintrón Vélez v. Cintrón de Jesús,* supra.

Con la partición se extingue la comunidad hereditaria, convirtiéndose las cuotas abstractas en títulos concretos de bienes en particular del caudal. *Íd.*; *Arrieta v. Chinea Vda. de Arrieta*, 139 DPR 525, 534 (1995). Dicho de otro modo, la partición es el proceso por el cual los coherederos transforman la cotitularidad de la totalidad de la herencia en títulos exclusivos sobre bienes particulares. La división de la comunidad hereditaria puede

realizarse en nuestra jurisdicción mediante la partición testamentaria, la partición convencional o la partición judicial.

La partición judicial se practica cuando los herederos no pueden ponerse de acuerdo en cuanto a la forma de efectuar la partición de los bienes. Es un procedimiento judicial especial mediante el cual los herederos, quienes hasta ese momento son únicamente titulares de una cuota abstracta sobre la totalidad del caudal hereditario, convierten sus participaciones indivisas en la herencia en bienes determinados o cuotas sobre bienes determinados. *Sucn. Sepúlveda Barreto v. Registrador*, 125 DPR 401, 405 (1990). La partición judicial se utiliza usualmente cuando no existe otra alternativa para poner fin al estado de indivisión. E. González Tejera*, Derecho Sucesorio Puertorriqueño,* Puerto Rico, Ed. Ramallo Bros., Inc., 1983, Vol. 1, pág. 355.

En relación al procedimiento de la partición de la herencia, el Profesor González Tejera explica que, para llevar una partición de herencia viable, es menester llevar a cabo varias operaciones previas. E. González Tejera, *op cit.*, pág. 402. Estas operaciones particionales previas son: inventario y avalúo, liquidación, división, formación de lotes o hijuelas y la adjudicación. J.R. Vélez Torres, *Curso de Derecho Civil: Derecho de Sucesiones*, 2da ed., San Juan, Universidad Interamericana de Puerto Rico, 1997, Tomo IV, Vol. III, pág. 523. Una vez se paguen las deudas y las cargas de la herencia, el remanente que resulte es lo que recibirán los herederos. E. Martínez Moya, *El Derecho Sucesorio Puertorriqueño*, 67 Rev. Jur. UPR. 1, 42 (1998).

Efectuados estos procedimientos, el Tribunal distribuirá de manera equitativa y justa el caudal entre los que tengan el derecho hereditario. Artículo 604 de la Ley de Enjuiciamiento Civil, 32 LPRA sec. 2625. Al efectuarse la partición del haber hereditario se adjudicará a cada heredero una porción con cosas de la misma

naturaleza, calidad o especie para así garantizar en lo posible la igualdad en el pago del caudal hereditario. Artículo 1014 del Código Civil de 1930, 31 LPRA sec. 2607. No obstante, cuando una cosa sea indivisible o desmerezca mucho por su división, podrá adjudicarse a uno, a calidad de abonar a los otros el exceso en dinero. Pero bastará que uno solo de los herederos pida su venta en pública subasta, y con admisión de licitadores extraños, para que así se haga. Artículo 1015 del Código Civil de 1930, 31 LPRA sec. 2881.

**B**

Ahora bien, la Exposición de Motivos de la Ley Núm. 55-2020, *supra,* dejó claro que uno de los propósitos del legislador al aprobar el nuevo Código Civil fue fortalecer la posición sucesoria del cónyuge supérstite. Por ello, se reconoció la necesidad de garantizar no solo su legítima en propiedad en igualdad de condiciones con los descendientes, sino también el derecho a permanecer en la vivienda familiar, como medida dirigida a proteger la estabilidad del núcleo doméstico, tras la muerte del causante. Véase Exposición de Motivos, Código Civil de Puerto Rico, Ley Núm. 55-2020, *supra.*

Con ese fin, el legislador aprobó el Artículo 1625 del Código Civil de Puerto Rico de 2020, que establece lo siguiente:

> El cónyuge supérstite puede solicitar la atribución preferente de la vivienda familiar. Cuando sus cuotas hereditarias y las gananciales no alcanzan el valor necesario para tal atribución, el cónyuge supérstite puede solicitar el derecho de habitación en forma vitalicia y gratuita en proporción a la diferencia existente entre el valor del bien y la suma de sus derechos. La diferencia de valor grava la cuota de libre disposición del causante. 31 LPRA sec. 11165.

Este precepto introdujo un nuevo estado de derecho en nuestro ordenamiento, mediante el cual se faculta al cónyuge supérstite a solicitar la atribución preferente de la vivienda familiar

y, en su defecto, un derecho de habitación vitalicio y gratuito. El tratadista Miguel R. Garay Aubán nos comenta que:

> Esta norma es una aplicación analógica del derecho a hogar seguro, que en el Derecho Sucesorio **plantea la necesidad de herramientas mediante las cuales el cónyuge supérstite pueda hacer valer sus derechos frente a quienes con él concurren a la herencia.** Se trata de atender el **problema específico** que surge cuando, al concurrir el cónyuge supérstite con otros herederos, el derecho hereditario de aquel y su participación ganancial no alcanzan para cubrir el valor necesario para que se le pueda adjudicar, en pago de estos derechos, el inmueble que constituyó la vivienda familiar, sea ésta un bien propio o un bien común. **En ausencia de esta norma y ante el supuesto planteado, la partición de la herencia requeriría la venta de la vivienda, privando así al cónyuge supérstite de continuar habitándola.** M. R. Garay Aubán, *Código Civil 2020 y su Historial Legislativo*, Segunda Ed. Rev., San Juan, Ed. SITUM, 2021, Tomo V, pág. 127.

El referido Artículo 1625 del Código Civil de 2020, *supra*, contempla, pues, dos escenarios concretos. En primer lugar, faculta al cónyuge supérstite a solicitar la atribución preferente de la vivienda familiar con cargo a sus cuotas hereditarias y gananciales, lo que le permite adjudicarse en propiedad el inmueble que constituyó el hogar conyugal. En segundo lugar, cuando tales cuotas resultan insuficientes para cubrir el valor de la vivienda, el legislador le reconoce la posibilidad de solicitar un derecho de habitación vitalicio y gratuito en proporción a la diferencia, quedando el exceso a cargo de la cuota de libre disposición del causante.

**C**

Es menester destacar que el Artículo 1808 del Código Civil de 2020, *supra,* dispone que:

> Las acciones y los derechos nacidos y no ejercitados antes de la entrada en vigor de este Código, subsisten con la extensión y en los términos que le reconoce la

legislación precedente; **pero sujetándose, en cuanto a su ejercicio y procedimientos para hacerlos valer, a lo dispuesto en este Código**. Si el ejercicio del derecho o de la acción se halla pendiente de procedimientos comenzados bajo la legislación anterior, y estos son diferentes de los establecidos en este Código, pueden optar los interesados por unos o por otros. 31 LPRA sec. 11713.

Dicho de otro modo, este artículo aborda dos cuestiones, una de fondo y otra de procedimiento. La cuestión de fondo es que subsisten las acciones y derechos nacidos y no ejercitados antes de la vigencia del nuevo Código, aun cuando este no los reconozca, en respeto a los derechos adquiridos. La cuestión de procedimiento se refiere a la forma de hacer valer los derechos y acciones. Si el derecho todavía no se ha ejercitado, se sigue el procedimiento dispuesto en el Código Civil de 2020. M. R. Garay Aubán, *supra*, pág. 374.

### III

En la presente causa, la parte peticionaria sostiene que el Tribunal de Primera Instancia erró al declarar *No Ha Lugar* la *Urgente Moción Informativa, Solicitud de Orden para la Paralización de Subasta, Solicitud de Consignación de Dineros y Solicitud de Otros Remedios*. Aduce que el foro recurrido incurrió en error al ordenar la venta en pública subasta del inmueble en cuestión ya que, en el presente caso no existe la necesidad de recurrir a tan drástico remedio. Argumentó que insistir en la venta judicial de un bien valorado en $142,000.00 para cubrir participaciones ascendentes a $20,747.94 resulta totalmente irrazonable, en tanto las deudas y obligaciones hereditarias serán asumidas en su totalidad por los peticionarios. A su vez, plantea que la cónyuge supérstite, la señora Reyes Falcón, ostenta un derecho de adquisición preferente sobre el inmueble que constituye la vivienda familiar.

Por su parte, los recurridos sostienen que la determinación del foro primario se ajusta al principio de que los coherederos no

están obligados a permanecer en indivisión y que, ante la falta de acuerdo entre los llamados, procede instar la partición judicial de los bienes que integran el caudal hereditario. Alegan que su interés en proseguir con la venta en pública subasta del inmueble responde al ejercicio legítimo de un derecho procesal reconocido por el Código Civil de 1930, *supra*, legislación vigente al momento de los hechos de la presente causa.

Habiendo entendido sobre los aludidos señalamientos a la luz de las particularidades del caso, del derecho aplicable, resolvemos expedir el auto solicitado y revocar la resolución recurrida. Nos explicamos.

De entrada, corresponde puntualizar que la sucesión se rige por la ley vigente al momento del fallecimiento, por lo que en este caso resulta aplicable el Código Civil de 1930. Bajo ese marco, ningún coheredero estaba obligado a permanecer en indivisión y podía, en cualquier momento, reclamar la partición de la herencia. Se trata de un procedimiento judicial especial mediante el cual los herederos, quienes hasta ese momento son únicamente titulares de una cuota abstracta sobre la totalidad del caudal hereditario, convierten sus participaciones indivisas en bienes determinados o en cuotas sobre bienes determinados. Sin embargo, a falta de acuerdo sobre cómo realizar la partición, corresponde al Tribunal llevarla a cabo de la forma más justa y equitativa posible. Ahora bien, tratándose de bienes inmuebles indivisibles, el ordenamiento preveía la venta en pública subasta a petición de cualquiera de los coherederos, con el fin de distribuir el precio entre todos. En otras palabras, lo que la ley garantizaba era el derecho de cada coheredero a percibir el valor íntegro de su cuota, mientras que la subasta constituía únicamente el remedio procesal previsto para hacer efectivo ese derecho en ausencia de consenso.

Sin embargo, también es cierto que el legislador, consciente de las consecuencias prácticas que el remedio de la subasta provocaba sobre el hogar conyugal, incorporó en el Código Civil de Puerto Rico de 2020 una solución específica para que el cónyuge supérstite pudiera hacer valer sus derechos frente a quienes concurren con él a la herencia. De ese modo, el ordenamiento reconoce la atribución preferente de la vivienda familiar a favor del cónyuge supérstite y, cuando el valor de sus cuotas hereditarias y gananciales no resulta suficiente, admite la concesión de un derecho de habitación vitalicio y gratuito en proporción a la diferencia, con cargo a la porción de libre disposición del causante. La finalidad que inspira la incorporación del Artículo 1625 del Código Civil de 2020, *supra*, resulta inequívoca: evitar que, a falta de acuerdo entre los coherederos, la vivienda familiar deba ser objeto de venta en pública subasta, privando así al cónyuge supérstite de la posibilidad de continuar habitándola.

Siendo ello así, en la presente causa el parámetro decisional del Tribunal no se agota en constatar la mera ausencia de consenso para, de forma automática, ordenar la venta en pública subasta. Resulta necesario examinar si existe una alternativa idónea que honre los derechos adquiridos de los coherederos, esto es, el íntegro de sus participaciones, sin menoscabar la protección que el ordenamiento reconoce a la vivienda familiar. En tal medida, cuando la parte interesada en conservar el inmueble se allana a satisfacer en dinero las cuotas correspondientes y a asumir las deudas del caudal, la venta en pública subasta deja de ser el remedio inmediato y se convierte en un recurso de carácter excepcional, reservado únicamente para aquellos supuestos en que no exista solución que, con igual o mayor justicia material, salvaguarde de forma simultánea los intereses de todos los coherederos y la estabilidad habitacional del cónyuge supérstite.

Precisamente, el diseño normativo vigente autoriza al tribunal a preferir soluciones menos onerosas que la venta en pública subasta, cuando el bien es la vivienda familiar del cónyuge supérstite y está disponible una alternativa que garantiza el pago de las participaciones. En esa dirección, el Artículo 1808 del Código Civil de 2020, *supra*, reconoce que los derechos nacidos bajo la legislación anterior subsisten en su contenido, aunque su ejercicio y procedimiento deben regirse conforme a las disposiciones actuales. Esto significa que, aun respetando los derechos hereditarios adquiridos conforme al Código de 1930, el Tribunal debe canalizar su ejercicio bajo el marco procesal del Código Civil de 2020, el cual privilegia soluciones que armonicen la satisfacción íntegra de las cuotas hereditarias y la protección de la vivienda familiar.

En el caso que nos ocupa, surge de los autos ante nuestra consideración que la parte peticionaria consignó en el Tribunal dos (2) cheques que totalizan la suma de $20,747.94, dirigida a cubrir íntegramente las cuotas hereditarias reconocidas a la parte recurrida. A su vez, consta que el Tribunal de Primera Instancia adjudicó a la cónyuge supérstite, la señora Reyes Falcón, la cantidad de $80,549.45 en concepto de liquidación de la sociedad legal de bienes gananciales, lo que contrasta con la suma considerablemente menor que corresponde a los recurridos y que, por añadidura, ya se encuentra consignada en autos. De ahí que no pase inadvertido que la negativa de la parte recurrida a aceptar la consignación no responde a insuficiencia alguna respecto a sus derechos sucesorios, sino únicamente al interés de que "se le extiendan otras ofertas que pudieran resultar ser mejor vía subasta pública".[4]

---

[4] Apéndice del recurso, Entrada Núm. 175.

Tal planteamiento no puede prevalecer. La función del Tribunal en un proceso de partición no es propiciar escenarios especulativos de ofertas en detrimento de la vivienda familiar, sino garantizar de manera justa y equitativa los derechos adquiridos de todos los coherederos. En consecuencia, la venta en pública subasta del inmueble que constituye el hogar conyugal no puede erigirse en la primera alternativa a considerar. Corresponde, en cambio, que el foro de instancia evalúe si la consignación satisface de forma adecuada las cuotas hereditarias reclamadas o, en su defecto, explore la posibilidad de disponer de otros bienes del caudal, reservando la subasta del hogar conyugal únicamente como último recurso.

A la luz de lo anterior, procede revocar la determinación recurrida y devolver el caso al Tribunal de Primera Instancia, con la instrucción de que, al llevar a cabo la partición, atienda las obligaciones de garantizar el valor íntegro de las cuotas de los recurridos, sin menoscabar la protección que el ordenamiento vigente dispensa a la vivienda familiar del cónyuge supérstite.

**IV**

Por los fundamentos que anteceden se expide el recurso de *certiorari* solicitado, se *revoca* la determinación recurrida. Se deja sin efecto la paralización de los procedimientos decretada y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los mismos, ello a tenor con lo aquí resuelto.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones